UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| | ) | |
| IN RE: DARVOCET, DARVON AND | ) | Master File No. 2: 11-md-2226-DCR |
| PROPOXYPHENE PRODUCTS | ) | MDL Docket No. 2226 |
| LIABILITY LITIGATION | ) | |
| | ) | |
| | ) | |
| *Freitas, et al., v. McKesson Corporation,* | ) | Civil Action No. 2: 12-50-DCR |
| *et al.,* | ) | |
| | ) | |
| | ) | **AMENDED** |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER**[1] |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The plaintiffs' Motion to Remand has been fully briefed and is pending for review. [MDL Record No. 1137] They argue that the Court lacks subject matter jurisdiction to hear their products-liability claims because the parties are not completely diverse. Conversely, the defendants maintain that Defendant McKesson Corporation was fraudulently joined and, therefore, its citizenship does not defeat diversity. For the reasons explained below, the plaintiffs' motion will be granted.

**I.**

---

[1]This Amended Memorandum Opinion is filed for the purpose of correcting a typographical error contained in the Memorandum Opinion and Order at page 6, line 2, entered July 2, 2012. [MDL Record No. 1987]

This matter was originally filed in California Superior Court, San Francisco County. [Record No. 1, p. 21][2] Six plaintiffs are citizens of California, while the remaining five reside in Oklahoma. [*Id.*, pp. 26-27] Of the eighteen named defendants, seventeen are citizens of states other than California.[3]  [*Id.*, pp. 28-32]  Defendant McKesson Corporation, however, has its principal place of business in San Francisco, California.  Thus, it is a California citizen for purposes of diversity jurisdiction.  [*Id.*, p. 28 ¶ 35]  *See* 28 U.S.C. § 1332(c)(1).

The plaintiffs generally allege that the defendants "knowingly or negligently marketed, distributed, and sold defectively designed Propoxyphene Products without adequate warnings." [Record No. 1, p. 24 ¶ 2]  The Complaint contains the following specific allegations regarding McKesson:

> 35.    Defendant MCKESSON CORPORATION (hereinafter, "McKesson"), at all times alleged herein, is and was a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the city of San Francisco, County of San Francisco, California, duly authorized to transact business in the State of California.  At all times alleged herein, McKesson is and was engaged in the business of marketing, distributing, promoting, advertising and selling Propoxyphene Products nationwide and specifically within the State of California, among other States, where Plaintiffs resided and/or ingested Propoxyphene Products.
>
> 36.    Upon information and belief and subject to discovery of information within the exclusive control of Defendants, McKesson distributed the Propoxyphene Products ingested by those Plaintiffs and decedents alleged herein

---

[2]All citations to the record related to Civil Action No. 2: 12-50 unless otherwise indicated.

[3]The defendants are McKesson Corporation; Eli Lilly and Company; aaiPharma, Inc.; aaiPharma LLC; AAI Development Services, Inc.; NeoSan Pharmaceuticals, Inc.; Xanodyne Pharmaceuticals, Inc.; Qualitest Pharmaceuticals, Inc.; Vintage Pharmaceuticals, Inc.; Propst Distribution, Inc.; Brenn Distribution, Inc.; Vintage Pharmaceuticals, LLC; Generics International (US), Inc.; Generics Bidco I, LLC; Generics Bidco II, LLC; Generics International (US Parent), Inc.; Endo Pharmaceuticals, Inc.; and Endo Pharmaceuticals Holdings, Inc.  [Record No. 1, p. 21]

to have ingested Propoxyphene Products. McKesson[] maintains comprehensive distribution agreements with major retail pharmacies including CVS, Wal-Mart, and Rite Aid.

37.    At all times alleged herein, McKesson includes any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their offices [sic], directors, employees, agents, representatives and any and all other persons acting on their behalf.[4]

[*Id.*, p. 28] With respect to all defendants, the plaintiffs asserted claims of design defect, failure to warn, strict liability, negligent design, negligence, negligent failure to warn, fraudulent nondisclosure, negligent misrepresentation and concealment, fraudulent misrepresentation, negligence per se, breach of express warranty, breach of implied warranty, deceit by concealment in violation of California law, false advertising in violation of the California Business and Professions Code, violation of the California Consumers Legal Remedies Act, wrongful death, and survival. [Record No. 1-1, pp. 15-43; Record No. 1-2, pp. 1-15]

On December 5, 2011, Xanodyne removed the case to the United States District Court for the Northern District of California. [Record No. 1, pp. 1-11] All defendants who had been served as of that date consented to removal, with the exception of McKesson. [*Id.*, p. 10 ¶¶ 37-38; Record No. 1-3, pp. 21-26] Xanodyne asserted that McKesson's consent was unnecessary because it had been fraudulently joined. [Record No. 1, p. 10 ¶ 39; *see id.*, pp. 7-8] For the same

---

[4]McKesson is also mentioned in paragraph 75 of the Complaint, which alleges: "Upon information and belief, the Generic Qualitest Defendants manufactured the majority of the Propoxyphene Products sold at national retailers, including CVS and Wal-Mart, as distributed by McKesson Defendants." [Record No. 1, p. 33 ¶ 75] The next paragraph states that "[f]or reference sake only, the Generic Qualitest Defendants, and any other Defendant and/or entity involved in the testing, manufacture, sale, *distribution* and/or marketing of generic Propoxyphene Products shall be referred to herein individually by name or jointly as the "Generic Defendants." [*Id.* ¶ 76 (emphasis added)] Thus, references in the Complaint to "Generic Defendants" are apparently intended to include McKesson.

reason, Xanodyne claimed that McKesson's California citizenship did not deprive the federal court of diversity jurisdiction.  [*See id.*, pp. 2, 6-8]

The plaintiffs filed a timely motion to remand, arguing that McKesson was properly joined and that the federal court thus lacked diversity jurisdiction.[5]  [Record No. 20]  At the time of their motion, Xanodyne had already filed a Notice of Potential Tag-Along Actions with the Judicial Panel on Multidistrict Litigation seeking inclusion of this action in the Darvon/Darvocet multidistrict litigation (MDL).  [*See* Record No. 13-1, p. 12]  Because the California district court concluded that the action should be stayed pending transfer to the MDL, it denied the remand motion as premature.  [Record No. 25]  On February 13, 2012, the action was transferred to this Court.  [Record No. 31]  Two weeks later, the plaintiffs re-filed their motion for remand.  [MDL Record No. 1137]  The motion is fully briefed, including supplemental authority provided by each side and responses to the supplements.  [MDL Record Nos. 1669, 1700, 1794, 1866, 1938, 1962]

## II.

The plaintiffs maintain that McKesson's California citizenship defeats diversity, thus depriving the Court of subject matter jurisdiction over this action.  [*See* MDL Record No. 1137-

---

[5]In addition, the plaintiffs argued that the removal was procedurally defective because McKesson had not consented. [Record No. 20, pp. 17-19]  The defendants claim that "[b]ecause Plaintiffs' Motion only challenges complete diversity," they have waived any argument concerning procedural defects in the Notice of Removal, as such objections must be made within thirty days of the notice.  [MDL Record No. 1528, p. 1 n.2 (citing 28 U.S.C. § 1447(c) (providing that "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal"))] However, the plaintiffs' original motion, which was timely filed, asserted this procedural defect, and they re-filed the motion (with the same arguments) in this Court fourteen days after the case was transferred.  [*See* Record Nos. 20, 43; MDL Record No. 1137-1, pp. 10-12]

1, pp. 2-10]  However, the defendants argue that removal was proper because the claims against McKesson have no chance of success.  Thus, they contend that McKesson is fraudulently joined, and its citizenship should be disregarded for diversity purposes.  [*See* MDL Record No. 1528, pp. 4-14]  In the alternative, the defendants ask the Court to find that the California plaintiffs' claims are fraudulently *mis*joined or to sever those claims pursuant to Rule 21 of the Federal Rules of Civil Procedure.  [*See id.*, pp. 14-17]

## A.    Fraudulent Joinder

A case filed in state court is removable only if it could have been brought in federal court originally.  *See* 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction[] may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending."); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 83 (2005) ("[Section] 1441 . . . authorizes removal of civil actions from state court to federal court when the action initiated in state court is one that could have been brought, originally, in federal district court.").  Pursuant to 28 U.S.C. § 1332, federal district courts have original jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interest and costs.[6]  28 U.S.C. § 1332(a).  The statute "has been interpreted to demand complete diversity, that is, that no party share citizenship with any opposing party."  *Caudill v. N. Am. Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000).  The removing party bears the burden of establishing diversity jurisdiction.  *Coyne ex rel. Ohio v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).

---

[6]The defendants adequately alleged that the amount-in-controversy requirement is met in this case. [*See* Record No. 1, pp. 8-9 ¶¶ 32-35]

An exception to the complete-diversity requirement arises where a non-diverse defendant has been fraudulently joined. *See id.* ("[The Sixth Circuit] has recognized that fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds.").[7]  Fraudulent joinder exists, and the case need not be remanded, if there is no "reasonable basis" to expect that the plaintiff's claims against the non-diverse defendant could succeed under state law.  *Id.* (citing *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)).  Although the plaintiff's actual motive is irrelevant to the fraudulent-joinder inquiry, *Jerome-Duncan, Inc. v. Auto-By-Tel Mktg. Corp.*, 176 F.3d 904, 907 (6th Cir. 1999), this test serves as "a proxy for establishing the plaintiff's fraudulent intent.  If the plaintiff has no hope of recovering against the non-diverse defendant, the court infers that the only possible reason for the plaintiff's claim against [that defendant] was to defeat diversity and prevent removal."  *Smith v. SmithKline Beecham Corp.*, No. 11-56-ART, 2011 U.S. Dist. LEXIS 75951, at *14 (E.D. Ky. July 13, 2011) (citation and internal quotation marks omitted).

In deciding whether a defendant has been fraudulently joined, the Court "must resolve all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the nonremoving party," and "[a]ll doubts as to the propriety of removal are resolved in favor of remand."  *Coyne*, 183 F.3d at 493 (omission in original) (internal quotation marks omitted).  If a determination cannot be made from the face of the complaint, the Court may "pierce[] the

---

[7]The parties initially disagreed as to which circuit's law governs the fraudulent-joinder inquiry. [*See* Record No. 1528, p. 4 n.4]  In their reply, however, the plaintiffs correctly acknowledged that Sixth Circuit law applies.  [MDL Record No. 1644, pp. 1-2] *See In re Asbestos Prods. Liab. Litig.* (*No. VI*), 673 F. Supp. 2d 358, 362 (E.D. Pa. 2009) ("On matters of procedure, the [MDL] transferee court must apply federal law as interpreted by the court of the district where the transferee court sits."); *id.* at 366 ("Whether a party was fraudulently joined to defeat diversity is a procedural issue.").

pleadings to consider summary-judgment-type evidence." *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 953 (6th Cir. 2011) (internal quotation marks omitted).  However, the Court must be careful not to "step[] from the threshold jurisdictional issue [of fraudulent joinder] into a decision on the merits." *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 112 (3d Cir. 1990).  The removing party bears the burden of establishing fraudulent joinder.  *Alexander*, 13 F.3d at 949. And this burden "'is a heavy one.'"  *Walker*, 443 F. App'x at 953 (quoting *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003)).

The defendants assert that three grounds support a finding of fraudulent joinder in this case: (1) the claims against McKesson are preempted; (2) the claims against McKesson are not cognizable under California law; and (3) the claims against McKesson are not supported by adequate factual allegations.  [MDL Record No. 1528, p. 2] Each argument is addressed below.

## 1.      Preemption

The parties primarily dispute whether the claims against McKesson are preempted under *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011).[8]  In *Mensing*, the Supreme Court held that state-law failure-to-warn claims against generic drug manufacturers are preempted by federal law. Because the Food, Drug and Cosmetic Act (FDCA) requires that generic drug labels match those of the corresponding brand-name products and any labeling change to satisfy state law would conflict with this "federal duty of sameness," the Court concluded, generic drug manufacturers could not simultaneously comply with state and federal law.  *Id.* at 2575; *see id.* at 2578.

_____

[8]The defendants' Notice of Removal contained no argument related to *Mensing*, although the case had been decided more than five months earlier.  [*See* Record No. 1, pp. 1-11]

According to the defendants, *Mensing* applies here because McKesson, like a generic manufacturer, had no power to change the labeling on its propoxyphene products without running afoul of the FDCA's sameness requirement.  In other words, they argue that a conflict existed between federal law and state law that prevented McKesson from complying with both. [MDL Record No. 1528, pp. 5-8]  The plaintiffs maintain that *Mensing* is inapplicable, pointing out that "*Mensing* did not involve distributors" and "says nothing about preemption of claims based on defective design or negligent marketing and distributing of an unreasonably dangerous product."[9]  [Record No. 1644, p. 4]

Analysis of the *Mensing* issue would be inappropriate at this juncture, however.  An assertion of fraudulent joinder must "be directed toward the joinder, not to 'the merits of the action as an entirety.'"  *Smallwood v. Ill. Cent. R.R. Co.*, 342 F.3d 400, 407 (5th Cir. 2003) (quoting *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 153 (1914)).  Preemption is a

---

[9]This Court and many others has found that *Mensing* does indeed bar such claims, at least where they amount to nothing more than repackaged allegations of failure to warn.  [*See* MDL Record No. 1305, p. 7 & n.7]  The plaintiffs in this action first acknowledged – but then denied – that their claims sound in failure to warn.  [*See* MDL Record No. 1137-1, p. 2 ("No California court has held that distributors are immune from liability for failure to warn."); MDL Record No. 1644, pp. 3-4 ("Plaintiffs assert claims against McKesson sounding in strict products liability and negligence thus falling outside the *Mensing* 'failure-to-warn' purview."); *see id.*, pp. 3-6 (attempting to distinguish claims at issue in *Mensing* from claims asserted in this action)]  As noted previously, however, the second paragraph of their Complaint alleges that the defendants "marketed, distributed, and sold defectively designed Propoxyphene Products *without adequate warnings*."  [Record No. 1, p. 24 ¶ 2 (emphasis added)]  Moreover, the majority of the plaintiffs' claims expressly allege some form of failure to warn.  [*See, e.g.*, Record No. 1-1, pp. 17-20 (strict products liability – failure to warn); *id.*, pp. 25-29 (negligent failure to warn); *id.*, p. 31 (fraudulent nondisclosure; "Defendants failed to adequately disclose to the general public or the medical community . . . about any of the risks" of propoxyphene or alternatives)]  Eleven of the counts against all defendants specifically allege that the plaintiffs were injured "[a]s a direct and proximate result of the defective and inappropriate warnings" accompanying propoxyphene products.  [*Id.*, p. 20 ¶¶ 246, 251; *id.*, p. 29 ¶ 296; *id.*, p. 39 ¶ 339; Record No. 1-2, p. 3 ¶ 371; *id.*, p. 5 ¶ 382; *id.*, p. 7 ¶ 390; *id.*, p. 8 ¶ 397; *id.*, p. 10 ¶ 406; *id.*, p. 12 ¶ 415; *id.*, p. 14 ¶ 424]

federal defense that goes to the merits of a claim.  As such, it does not support a finding of fraudulent joinder.  *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1045 (9th Cir. 2009) (preemption defense "requires an inquiry into the merits of the plaintiff's claims against all defendants and an analysis of federal law," and a defendant who argues preemption does not "overcome the strong presumption against removal jurisdiction" (internal quotation marks omitted)); *Hughes v. Mylan, Inc.*, No. 11-5543, 2011 U.S. Dist. LEXIS 123544, at *25-27 (E.D. Pa. Oct. 25, 2011) (rejecting *Mensing* as basis for fraudulent-joinder argument).  California courts are capable of deciding whether the plaintiffs' claims against McKesson are preempted. *See Smallwood*, 342 F.3d at 408 ("[S]tate courts are equally competent to decide federal defenses."); *Hughes*, 2011 U.S. Dist. LEXIS 123544, at *25 ("Whether or not some or all of [the plaintiffs'] claims are preempted based on the Supreme Court's decision in *Mensing* is a legal issue based on preemption that can be addressed by a state court.").

Moreover, if the Court were to deny the plaintiffs' motion for remand, the *Mensing* preemption defense would be asserted by eleven of the seventeen other defendants in this case. [*See* Record Nos. 58, 64]  As the Third Circuit has explained,

> where there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses.  Instead, that is a merits determination which must be made by the state court.

*Boyer*, 913 F.2d at 113.  This rule, known as the common defense rule, is consistent with the rationale for the doctrine of fraudulent joinder: if a plaintiff's claims against diverse and non-diverse defendants suffer from the same alleged flaw, that indicates not fraudulent intent in the

non-diverse defendant's joinder, but rather a problem with the plaintiff's case overall. *See Smith*, 2011 U.S. Dist. LEXIS 75951, at *17-18 (explaining and adopting common defense rule). The Court could not evaluate the latter without impermissibly "step[ping] from the threshold jurisdictional issue into a decision on the merits." *Boyer*, 913 F.2d at 112; *see Collins ex rel. Collins v. Am. Home Prods. Corp.*, 343 F.3d 765, 768-69 (5th Cir. 2003) (application of fraudulent joinder was improper where the defendants had "successfully convinced the district court to rule on a common defense under the pretense of determining whether the [non-diverse] defendants had been fraudulently joined"); *Smith*, 2011 U.S. Dist. LEXIS 75951, at *15 (viability of action as a whole is "a quintessential merits determination that belongs in the state court"). The defendants' *Mensing* argument therefore fails.

### 2.     California Law

The defendants' next contention that the plaintiffs have not stated a cognizable claim fares no better than the first. Notably, the defendants stop short of asserting that California courts do not recognize drug-distributor liability. Instead, they simply declare that "McKesson has been found to be fraudulently joined in similar circumstances." [MDL Record No. 1528, p. 8] They offer a one-page unpublished opinion in which the Central District of California decided, without analysis or citation of authority, that McKesson had been fraudulently joined because "[p]ursuant to comment k of the Restatement (Second) of Torts Section 402A and California law following comment k, a distributor of a prescription drug is not subject to liability." *In re Rezulin Litig.*, No. CV 03-1643-R(RZX), 2003 WL 25598915, at *1 (C.D. Cal. Apr. 28, 2003). The plaintiffs, however, have cited numerous decisions in which courts have

refused to find McKesson fraudulently joined on this ground, concluding that California law with respect to drug-distributor liability is at best unsettled.  [*See* MDL Record No. 1644, pp. 6-7 (citing, *inter alia*, *Moorhouse v. Bayer Healthcare Pharm., Inc.*, No. 08-01831 SBA, 2008 U.S. Dist. LEXIS 48833, at *18 (N.D. Cal. June 18, 2008) ("[I]t is not obvious according to the settled rules of California that distributors of prescription drugs cannot be held liable for a failure to warn."); *Maher v. Novartis Pharm. Corp.*, No. 07CV852 WQH (JMA), 2007 U.S. Dist. LEXIS 58984, at *12 (S.D. Cal. Aug. 10, 2007) ("This Court has been unable to find, nor has either party cited, a case under California law which creates an exception in strict liability for distributors in prescription drug cases."); *Black v. Merck & Co.*, No. CV 03-8730 NM (AJWx), 2004 U.S. Dist. LEXIS 29860, at *11 (C.D. Calif. Mar. 3, 2004) (finding no fraudulent joinder because "state law is unsettled as to whether a distributor of prescription drugs could be strictly liable for failure to warn"))]

The defendants urge the Court to disregard these cases because they were decided before *Mensing*.  [MDL Record No. 1528, p. 8]  As explained above, however, *Mensing* is inapposite here.[10]  And any uncertainty surrounding the relevant state law must be resolved in the plaintiffs' favor.  *Coyne*, 183 F.3d at 493.  Because the defendants have failed to demonstrate that

---

[10]Courts examining the issue since *Mensing* have reached the same conclusion.  *See, e.g.*, *Rivera v. AstraZeneca Pharm. LP*, No. 12-02921 GAF (JEMx), 2012 U.S. Dist. LEXIS 78808, at *10 (C.D. Calif. June 5, 2012) ("As numerous other courts have found, the scope of liability for distributors of pharmaceutical products has not been clearly established under California law."); *Norris v. AstraZeneca Pharm. LP*, No. 12cv0836 JM(BLM), 2012 U.S. Dist. LEXIS 74752, at *5 (S.D. Calif. May 30, 2012) ("Virtually every court that has considered the issue . . . has concluded that California state law recognizes a products liability claim against a [pharmaceutical] distributor."); *Mendez v. AstraZeneca Pharm. LP*, No.1:12-CV-00535-LJO-DLB, 2012 U.S. Dist. LEXIS 73270, at *6-7 (E.D. Calif. May 25, 2012) (declining to find McKesson fraudulently joined because the court could "[]not say that a cause of action for strict liability against a prescription drug distributor or others in the chain of distribution is not viable under California law").

distributors of prescription drugs are not subject to liability under California law, the Court cannot find McKesson fraudulently joined on that ground.

### 3.     Sufficiency of Factual Allegations

This leaves the defendants' contention that the claims against McKesson are factually deficient. [*See* MDL Record No. 1528, pp. 9-14]  As an initial matter, the parties disagree regarding whether state or federal pleading standards apply in this context.  The defendants argue that the sufficiency of the allegations should be determined according to the familiar *Twombly/Iqbal* framework.  [*See id.*, pp. 9-10]  But in the plaintiffs' view, their Complaint should be evaluated under California's pleading requirements which are more lenient.  [*See* MDL Record No. 1644, pp. 9-10]

The Court will apply state pleading rules.  The test for fraudulent joinder is whether a reasonable basis exists for predicting that the plaintiff's claims against the non-diverse defendant could succeed *under state law*.  *Coyne*, 183 F.3d at 493.  It makes little sense to measure the state-law viability of such claims, which were originally filed in state court, by federal pleading standards.  *See Murphy v. Broyhill Furniture Indus.*, No. 3:08-CV-2092-M, 2009 U.S. Dist. LEXIS 46704, at *18 (N.D. Tex. June 2, 2009) ("The question presented to the court in a motion to remand based on improper joinder is not one of sufficiency of the pleadings under federal procedural rules, but rather the plausibility of a plaintiff's claim under applicable state law . . . ."); *Kuperstein v. Hoffman-La Roche, Inc.*, 457 F. Supp. 2d 467, 471-72 (S.D.N.Y. 2006) (applying state pleading standards "[b]ecause the purpose of [the] fraudulent joinder analysis is to determine whether a *state* court might permit a plaintiff to proceed with his claims"); *see also*

*Ayala-Castro v. GlaxoSmithKline* (*In re Avandia Mktg.*), 624 F. Supp. 2d 396, 417 (E.D. Pa. 2009) ("The Court measures the adequacy of Plaintiffs' factual allegations and legal claims against the legal standards of California, the state where this action was originally filed.").  The Sixth Circuit has observed that when "addressing the sufficiency of pleadings" in a removed action, it "must look to state law."[11]  *Alexander*, 13 F.3d at 948.  And it has repeatedly stated the fraudulent-joinder test in terms of whether the claims at issue could survive in state court.  In *Jerome-Duncan*, for example, the court explained:

> Under the doctrine of fraudulent joinder, the inquiry is whether [the plaintiff] had at least a colorable cause of action against [the non-diverse defendant] in the Michigan state courts.  We thus look to Michigan law in determining whether [the non-diverse defendant] is a proper party, or whether it was fraudulently joined.

176 F.3d at 907.  In short, Sixth Circuit precedent and common sense dictate the use of state pleading rules to determine whether McKesson is fraudulently joined.  Under those rules, the plaintiffs' Complaint is sufficient.

A civil complaint filed in California must contain "[a] statement of the facts constituting the cause of action, in ordinary and concise language."  Cal. Civ. Proc. Code § 425.10(a)(1).  California pleading rules "require . . . only general allegations of ultimate fact.  The plaintiff

---

[11]Decisions to the contrary are sometimes premised on Rule 81 of the Federal Rules of Civil Procedure which provides that the federal rules "apply to a civil action after it is removed from state court." Fed. R. Civ. P. 81(c)(1); *see, e.g.*, *Johnson v. DePuy Orthopaedics, Inc.*, No. 1:11 dp 21813, 2012 U.S. Dist. LEXIS 74450, at *7 (N.D. Ohio May 30, 2012).  If the Federal Rules apply to removed cases, the reasoning goes, then complaints in those cases are subject to Rule 8's "short and plain statement" requirement and the case law interpreting it — namely, *Twombly* and *Iqbal*.  Fed. R. Civ. P. 8(a)(2); *see Johnson*, 2012 U.S. Dist. LEXIS 74450, at *7.  But as the Eastern District of Tennessee recently observed, the fraudulent-joinder analysis tests the validity of the removal itself.  *Copper Basin Fed. Credit Union v. Fiserv Solutions, Inc.*, No. 1:11-CV-203, 2011 U.S. Dist. LEXIS 118702, at *11-12 n.9 (E.D. Tenn. 2011).  Aside from the questionable logic of retroactively applying federal pleading standards to cases filed in state court, Rule 81 cannot apply until after the Court has determined that removal was proper.  *See id.*

need not plead evidentiary facts supporting the allegation of ultimate fact. A pleading is adequate so long as it apprises the defendant of the factual basis for the plaintiff's claim." *McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227, 238 (Cal. Ct. App. 2006) (citations omitted). Allegations may be made on information and belief if the plaintiff "has information leading him to believe that the allegations are true." *Doe v. City of Los Angeles*, 169 P.3d 559, 570 (Cal. 2007) (internal quotation marks omitted).

In this case, the plaintiffs allege that McKesson and the other defendants "knowingly or negligently marketed, distributed, and sold defectively designed Propoxyphene Products without adequate warnings." [Record No. 1, p. 24 ¶ 2] They further allege that McKesson distributed the propoxyphene products that caused their injuries. [*See id.*, p. 28 ¶ 36] Although this allegation was premised on "information and belief and subject to discovery of information within the exclusive control of Defendants," the plaintiffs did provide some factual support, alleging that McKesson distributed and sold propoxyphene products "nationwide and specifically within the State of California, among other states, where Plaintiffs resided and/or ingested Propoxyphene Products" [*id.* ¶ 35] and that it "maintain[ed] comprehensive distribution agreements with major retail pharmacies including CVS, Wal-Mart, and Rite-Aid." [*Id.* ¶ 36] In addition, McKesson is alleged to have distributed propoxyphene products manufactured by the Generic Qualitest Defendants, which, as set forth in the Complaint, produced "the majority of the Propoxyphene Products sold at national retailers." [*Id.*, p. 33 ¶ 75]

The defendants assert that these allegations fall short under *any* pleading standard. [MDL Record No. 1528, p. 10] In support, they point to two cases in which McKesson was deemed

-14-

fraudulently joined on the ground that the factual allegations against it were inadequate.  [*Id.*, pp. 12-13]  Each case is distinguishable.

The defendants rely heavily on the first case, *Tucker v. McKesson Corp.*, No. C 10-2981 SBA, 2011 U.S. Dist. LEXIS 104045 (N.D. Cal. Sept. 14, 2011), but omit an important detail. In *Tucker*, the court, noting the "overwhelming evidence showing the absence of any possible claim against McKesson," found that the defendants had met their burden in establishing McKesson's fraudulent joinder. *Id.* at *10.  Significantly, however, the *Tucker* plaintiff admitted that McKesson was not the distributor of the drug he had ingested.  In fact, he had already dismissed his claims against McKesson.  *Id.* at *9.  Unlike this case, in *Tucker* it was undisputed that the plaintiff's claims against the non-diverse defendant could not succeed.

In the second case, *Aronis v. Merck & Co.*, No. S-05-0486 WBS DAD, 2005 U.S. Dist. LEXIS 41531 (E.D. Cal. May 3, 2005), the fatal flaw was the plaintiff's failure to "alleg[e] that McKesson ever handled the specific pills that were allegedly the cause of her injuries."  *Id.* at *3.  The plaintiff "d[id] not allege that McKesson contributed in any way to her injuries, only that McKesson [was] a distributor" of the drug. *Id.* at *4.  Here, by contrast, the plaintiffs have specifically alleged that McKesson distributed the propoxyphene products they ingested.[12] [Record No. 1, p. 24 ¶ 36]

---

[12]Likewise, in another case cited by the defendants, *Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546 (E.D. Ky. 2001), the court found that the defendant pharmacies were fraudulently joined because the complaint lacked "any averment to the effect that [the] pharmacies sold or supplied OxyContin to *plaintiffs*." *Id.* at 549.  "Absent such an allegation," the complaint failed to connect the pharmacies to the plaintiffs' alleged injuries and thus "state[d] no cause of action against" the pharmacies.  *Id.*  The complaint in this matter does not suffer from the same defect.

The defendants further emphasize that the plaintiffs have presented no evidence to support their allegations that McKesson distributed the propoxyphene products in question. [MDL Record No. 1528, p. 13]  With their reply, however, the plaintiffs submitted documents purportedly showing that each of the California plaintiffs who allegedly ingested propoxyphene purchased it from a retailer that had a distribution agreement with McKesson.[13]  [Record Nos. 57-2, 57-6]  Pharmacy records for Terry Freitas reflect that he had his prescription for Darvon filled at Safeway from 2005 to 2010 [*see* Record No. 57-2], while Oleta Burney filled a prescription for Propo-N/Apap (a propoxyphene product) at Wal-Mart, and Linda Miller purchased Darvocet at CVS.  [*See* Record No. 57-6, pp. 2, 4]  Other documents attached to the plaintiffs' reply include McKesson press releases concerning its distribution agreements with Safeway, Wal-Mart, and CVS.  [*See* Record No. 57-3, p. 2; Record No. 57-4, p. 2; Record No. 57-5, pp. 2-3]

This evidence, combined with the allegations in the Complaint, satisfies the Court that McKesson is not fraudulently joined.  The plaintiffs have adequately apprised McKesson of the factual basis for their claims: they allege injuries arising from ingestion of propoxyphene products, and they specifically allege that McKesson distributed those products.  *See McKell*, 49 Cal. Rptr. 3d at 238.  The documents provided with their reply, while not conclusive, do support those allegations.  *See Walker*, 443 F. App'x at 953 (court may look beyond complaint and consider "summary-judgment-type evidence" as part of fraudulent-joinder inquiry).  Moreover,

---

[13]The California plaintiffs are Terry Freitas, Oleta Burney, Linda Miller, and their respective spouses, Lori Freitas, Harold Burney, and Anthony Miller.  [*See* Record No. 1, pp. 26-27]  Only Terry Freitas, Oleta Burney, and Linda Miller are alleged to have ingested propoxyphene products.  [*See id.*]

the Court is mindful that any doubts regarding the propriety of removal must be resolved in the plaintiffs' favor.  *See Coyne*, 183 F.3d at 493.  In summary, the defendants have failed to show that there is no reasonable basis to predict that the plaintiffs' claims against McKesson could succeed under California law.  The Court, therefore, finds that McKesson is not fraudulently joined.  *See id.*

### B.    Fraudulent Misjoinder

In the event the Court concludes that there is no fraudulent joinder, the defendants contend that it should find that the California plaintiffs' claims are fraudulently *mis*joined.  [*See* Record No. 1528, pp. 14-16]  The doctrine of fraudulent misjoinder emerged in cases in which plaintiffs join unrelated claims against a non-diverse defendant for the purpose of defeating diversity.  *See* 16 *Moore's Federal Practice* § 107.14[2][c][iv][A.1] (Matthew Bender 3d ed.). Generally, "mere misjoinder" does not amount to fraudulent misjoinder.  Instead, the misjoinder must be "egregious."  *Asher v. Minn. Mining & Mfg. Co.*, No. 04-CV-522-KKC, 2005 U.S. Dist. LEXIS 42266, at *31 (E.D. Ky. June 30, 2005) (internal quotation marks omitted).  As the defendants acknowledge, courts within this district have adopted, *see id.* at *37-38, and — more recently — rejected, *see Murriel-Don Coal Co. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590 (E.D. Ky. 2011), the fraudulent-misjoinder doctrine.  Given the unsettled law surrounding the doctrine, the Court sees no reason to employ it here.

It does not appear that the plaintiffs are improperly joined in any event.  As with fraudulent joinder, the "legal point of reference" in the fraudulent-misjoinder analysis is the joinder law of the state from which the action was removed.  *In re Avandia*, 624 F. Supp. 2d at

413; *see id.* at 420 ("[T]he joinder law of California must guide any inquiry into the propriety

of the joinder herein, as California is where this action was originally filed."); *Asher*, 2005 U.S.

Dist. LEXIS 42266, at *40 n.3 ("[S]ince the focus of the fraudulent misjoinder analysis is on

whether the claims were properly joined in the state court complaint, it flows that the procedural

rules of the state court in which the action was filed should govern the issue of proper joinder.").

While the wording of California's joinder rule is nearly identical to that found in Rule 20 of the

Federal Rules of Civil Procedure, the state rule is "'interpreted more liberally'" than Rule 20

"and [is] satisfied by 'any factual relationship between the claims joined.'"[14] *In re Avandia*, 624

F. Supp. 2d at 420 (quoting *In re Fosamax Prods. Liab. Litig.*, No. 1:06-MD-1789 (JFK), 2008

U.S. Dist. LEXIS 57473, at *57 (S.D.N.Y. July 28, 2009)). Here, the plaintiffs claim to have

suffered similar injuries arising out of the defendants' "manufacture, marketing, or sale" of

propoxyphene products. [Record No. 1, p. 25 ¶ 6] This relationship among the claims is likely

enough to satisfy California's joinder rule. *See In re Avandia*, 624 F. Supp. 2d at 240 (claims

appeared to satisfy California's permissive joinder standard where plaintiffs "allege[d] that the

---

[14]Rule 20 provides:

> Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly,
> severally, or in the alternative with respect to or arising out of the same transaction,
> occurrence, or series of transactions or occurrences; and (B) any question of law or fact
> common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1). Likewise, the relevant California rule permits joinder of plaintiffs who "assert any right to relief jointly, severally, or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action." Cal. Civ. Proc. Code § 378(a)(1).

same or similar fraudulent or otherwise tortious conduct by Defendants caused their similar injuries").

## C.     Severance

The defendants also suggest that the Court should sever the plaintiffs' claims "in order to achieve complete diversity and establish proper jurisdiction." [Record No. 1528, p. 16] Pursuant to Rule 21, they assert, the Court may retain the claims of the Oklahoma plaintiffs (over which it does possess diversity jurisdiction) and sever the California plaintiffs' claims, remanding them to state court. [*See id.* at 17] The Court declines to do so.

Rule 21 provides: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. The Supreme Court has recognized that Rule 21 authorizes courts "to allow a dispensable nondiverse party to be dropped at any time" in the litigation. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989). This power exists even in the absence of misjoinder. *See id.* at 839-40 (Kennedy, J., dissenting) ("There is no claim here that [the non-diverse party] is an improper party to this action, only that his presence defeats federal jurisdiction.").

The defendants contend that severance is appropriate in this case because "[m]aintaining as many claims as possible in the MDL serves the purposes for which the MDL was established: for the convenience of the parties and witnesses, and in order to promote the just and efficient conduct of the litigation." [MDL Record No. 1528, p. 17] That is the extent of their argument, and it is unconvincing. The Court fails to see how severing and remanding half of the claims

would promote efficiency, since the defendants (all of whom are already involved in this MDL) will be forced to litigate in two locations under either outcome. And having found nothing improper in the filing of this action, the Court is not inclined to deprive the plaintiffs of their chosen forum merely because it can.

> ### D.    Attorney's Fees

The plaintiffs seek an award of fees and costs under 28 U.S.C. § 1447(c) on the ground that Xanodyne's notice of removal "is merely a litigation strategy designed to cause unnecessary delay and to deplete Plaintiffs' Counsel['s] resources." [MDL Record No. 1137-1, p. 12] They claim that such an award is justified because Xanodyne removed the case despite "overwhelming" precedent indicating that removal was improper. [*Id.*, p. 12] The defendants counter that removal was justified based on *Tucker*, which had been decided just a few months before in the same district. [MDL Record No. 1528, p. 18]

Attorney's fees should be awarded pursuant to § 1447(c) "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). While *Tucker*'s precedential value is minimal given that the plaintiff in that case conceded the worthlessness of his claims against McKesson, *see* 2011 U.S. Dist. LEXIS 104045, at *9, it nonetheless represents favorable precedent, involving the same defendant, from the very court to which this case was removed. At the time of removal, Xanodyne presumably did not know whether the plaintiffs would ultimately be able to present evidence linking McKesson to their injuries. Since *Tucker* was not clearly distinguishable when

Xanodyne removed the case, the Court does not find that the removal was objectively unreasonable.  As a result, no fee award is warranted.  *See Martin*, 546 U.S. at 141.

**III.**

The defendants have not carried their burden to establish that removal of this action was proper.  Accordingly, it is hereby

**ORDERED** as follows:

(1)    Plaintiffs' Motion to Remand for Lack of Subject Matter Jurisdiction [MDL Record No. 1137] is **GRANTED** insofar as the plaintiffs seek remand.  The plaintiffs' request for attorney's fees and costs is **DENIED**.

(2)    McKesson Corporation's Motion to Dismiss [MDL Record No. 1900] is **DENIED**, without prejudice, as moot.

(3)    This action is **REMANDED** to the California Superior Court, San Francisco County, and **STRICKEN** from this Court's docket.

This 17th day of July, 2012.



**Signed By:**

*Danny C. Reeves*

**United States District Judge**

-21-
