UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | |
|---|---|
| IN RE: DARVOCET, DARVON AND PROPOXYPHENE PRODUCTS LIABILITY LITIGATION ) ) ) ) | Master File No. 2: 11-md-2226-DCR MDL Docket No. 2226 |
| *Lopez v. Eli Lilly & Company, et al.*, ) ) ) | Civil Action No. 2: 12-046-DCR |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On October 10, 2012, the Court granted, in part, the motion for judgment on the pleadings filed by Defendants AAIPharma LLC, AAIPharma Inc., AAIPharma Development Services Inc., and NeoSan Pharmaceuticals, Inc. (collectively, "AAI Defendants"). [Record No. 2767] In doing so, the Court dismissed the failure-to-warn claims asserted against aaiPharma LLC ("aaiPharma") by Plaintiffs Mark and Mary Lopez in the above-captioned matter. However, the plaintiffs' design defect claims remained pending. The plaintiffs have since filed a motion for reconsideration, arguing that their failure-to-warn claims should be reinstated. [Record No. 2376] For the reasons explained below, the Court will grant the plaintiffs' motion.

-1-

**I.**

"Although the Federal Rules of Civil Procedure do not contemplate a motion to reconsider, courts evaluate motions to reconsider that are filed within twenty-eight days of the entry of judgment under the same standard as a motion to alter or amend judgment under Rule 59(e)."[1] *Howard v. Magoffin Cnty. Bd. of Educ.*, 830 F. Supp. 2d 308, 319 (E.D. Ky. 2012). The Court "may alter the judgment based on: '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)).

**II.**

The plaintiffs request that the Court reinstate their failure-to-warn claims. They argue that because aaiPharma "controlled the label warnings at the time the drug Lopez ingested was manufactured, labeled and sold," it can be held liable for failure to warn even though Lopez did not ingest the drug until after aaiPharma sold the New Drug Application ("NDA") for propoxyphene. [MDL Record No. 2376-2, p. 3] The plaintiffs assert that aaiPharma "could have altered the label associated with Darvocet N-100, but chose not to do so before selling to Xanodyne." [*Id.*] Thus, the plaintiffs maintain that "the fact that [aaiPharma] no longer held the NDA it had sold to Xanodyne when Lopez ingested Darvocet N-100 is irrelevant." [*Id.*] The

---

1   Because the Court did not dismiss all of the plaintiffs' claims, the Court did not enter a judgment with its October 10, 2012 Memorandum Opinion and Order. However, the Court will use the standard for motions to alter or amend under Rule 59(e) as a guide in its analysis of the plaintiffs' motion.

AAI Defendants counter that "the relevant date with respect to a failure to warn claim is the date of ingestion – not the date the drug was manufactured and sold." [MDL Record No. 2408, p. 3]

It is a "central premise of federal drug regulation that the manufacturer bears responsibility for the content of its label at all times." *Wyeth v. Levine*, 555 U.S. 555, 570-71 (2009). However, once the manufacturer has divested its interest in a drug, it is no longer responsible for the label of that drug. This is because it would be impossible for the manufacturer to update the label of a drug that it no longer owns or manufactures. Title 21, section 314.70, of the Code of Federal Regulations governs the procedures for supplementation or changes to the NDA, including labeling changes.[2] Under that section, an "applicant must promptly revise all promotional labeling and advertising to make it consistent with any labeling change implemented." 21 C.F.R. § 314.70(a)(4). An "applicant" is defined as "any person who owns an approved application," or NDA. 21 C.F.R. § 314.3(b). Therefore, a more precise statement than that made in *Wyeth* is that an *NDA-holder* bears responsibility for the content of its label at all times. A former NDA-holder that has divested its ownership of a drug is not allowed — much less required — to implement labeling changes for its previously-owned drug. Thus, the ingestion date is not an irrelevant inquiry, as the plaintiffs contend. But, having determined that a brand-name manufacturer is not responsible for its label after divestiture, the question then becomes whether aaiPharma can be held liable for failing to make changes to the label while it held the NDA.

---

2    A change in the labeling to "add or strengthen a contraindication, warning, precaution, or adverse reaction" constitutes a moderate change. 21 C.F.R. § 314.70(c)(6)(iii)(A). The NDA-holder can "commence distribution of the drug product involved upon receipt by the agency of a supplement for the change." 21 C.F.R. § 314.70(c)(6).

The plaintiffs assert that "the fact that Lopez did not consume the drug until after it sold the NDA is irrelevant, at least so long as the information that would have led a reasonable manufacturer to strengthen its warnings was available while [aaiPharma] still held the NDA."[3] [MDL Record No. 2437, p. 2] Under New Jersey law, a pharmaceutical "manufacturer's duty on learning of [its product's] dangerous side effects [is] to warn 'as soon as reasonably feasible.'"[4] *Feldman v. Lederle Labs.*, 625 A.2d 1066, 1070 (N.J. 1993) (quoting *Feldman v. Lederle Labs.*, 479 A.2d 374, 388 (N.J. 1984)). In other words, liability attaches on the date the manufacturer learns about the adverse effects of its drug. It is a question of fact whether aaiPharma obtained such information, and if so, when. Therefore, if it is proved that aaiPharma knew about the alleged dangers of propoxyphene during the time that it held the NDA for the drug, then aaiPharma can be held liable to consumers of its product — even those that ingested the drug after divestment — for the failure to update the label to reflect that knowledge. The plaintiffs in the above-captioned case have adequately alleged the ingestion of a brand-name product that was manufactured and sold by aaiPharma *while it held the NDA*. [Civil Action No. 2: 12-046-DCR, Record No. 66 ¶ 8(c)] Thus, they have alleged sufficient facts to allow the Court to draw a reasonable inference that aaiPharma is liable for the misconduct alleged.[5] For

---

3   The plaintiffs did not make this assertion, at least not with any specificity, in their response to the AAI Defendants' motion for judgment on the pleadings. The extent of their argument was the following conclusory statement: "That the drugs were purchased by the *Lopez* Plaintiff after AAI sold its NDA has no bearing on this. As the manufacturer and seller of the drug at issue, AAI can be held liable under each theory pled in the complaint." [MDL Record No. 2244, p. 6]

4   The plaintiffs are residents of New Jersey and this action was filed in the District Court for the District of New Jersey. [Civil Action No. 2: 12-046-DCR, Record No. 1 ¶ 7]

5   Under New Jersey law, "[d]efendants who comply with FDA requirements are granted a rebuttable presumption that the labeling is adequate." *Cornet v. Johnson & Johnson*, 48 A.3d 1041, 1056 (N.J. 2012).

these reasons, the Court concludes that it was error to dismiss the plaintiffs' failure-to-warn claims against aaiPharma.

The *Lopez* plaintiffs, therefore, have stated a claim upon which relief may be granted. However, the Court notes that this conclusion only applies in the very limited circumstances presented here — namely, where the plaintiff sufficiently alleges the ingestion of a brand-name drug, but the dates of ingestion occurred after divestment of the NDA by the brand-name manufacturer.[6] Moreover, this determination does not change the analysis or outcome in any of the Court's previous opinions or orders in this MDL proceeding. The Court has previously determined that it is a general principle of products-liability law that a plaintiff must allege sufficient facts to allow the reasonable inference that the injury-causing product was sold, manufactured, or distributed by the defendant. Thus, the majority of the Court's previous dismissals of claims against brand-name manufacturers in this proceeding have been based on the plaintiffs' failure to properly identify the specific defendant's product that was ingested. [*See, e.g.*, Record Nos. 2150, 2247] Additionally, in the March 7, 2012 Memorandum Opinion and Order, the Court found that Eli Lilly and Company ("Lilly") cannot be held liable to plaintiffs that ingested AAI or Xanodyne products, despite allegations that Lilly transferred its inventory to NeoSan when it sold its marketing rights, because the plaintiffs had established no

---

Therefore, "a plaintiff asserting a failure to warn claim based on an inadequate label or instructions has stricter pleading requirements" and must plead "specific facts alleging deliberate concealment or nondisclosure of after-acquired knowledge of harmful effects." *Id.* (internal quotation marks omitted). The plaintiffs' allegations are sufficient in this respect. [Civil Action No. 2: 12-046-DCR, Record No. 1 ¶¶ 220, 263, 284 (alleging failure to disclose information about adverse effects)]

6   The results in such circumstances may also vary depending on the state's law that is applied to the claims.

more than a "mere possibility" that Lilly manufactured the propoxyphene product actually ingested. [MDL Record No. 1402, p. 14] The claims in the above-captioned case differ from those previously dismissed because the *Lopez* plaintiffs sufficiently identified the propoxyphene products ingested as having been manufactured and sold by aaiPharma. Thus, the Court's decision on the motion to reconsider does not relieve any subsequent MDL plaintiff of the requirement to allege sufficient facts to allow the reasonable inference that the injury-causing product was sold, manufactured, or distributed by the specific brand-name defendant against whom the plaintiff seeks to proceed.

Nor does this decision revive any previously-dismissed claims that were asserted against Lilly in its capacity as a contract manufacturer for Generic Defendants Mylan Pharmaceuticals, Inc. and Mylan, Inc. ("Mylan"). The Court's previous conclusion that Lilly has no duty to warn the consumers of a generic propoxyphene product sold by Mylan was based on the fact that the theory of liability was too attenuated to state a viable claim.[7] [MDL Record No. 2054, p. 7; *see also* MDL Record No. 2184, pp. 6-8] That holding is not affected by the above discussion because the factual allegations are different. The *Lopez* plaintiffs do not seek to hold aaiPharma liable based on an alleged supply agreement with a Generic Defendant. Rather, aaiPharma is a brand-name manufacturer that directly sold the product ingested. Under New Jersey law, a brand-name manufacturer's duty to warn arises when it learns about its product's "dangerous

---

[7] Importantly, the Court also based its decision, in part, on policy concerns. As a federal court sitting in diversity, the Court refused to adopt a rule that had the potential to unduly expand the liability of brand-name manufacturers without a clear precedent that would require such an outcome. The same concerns are not present in this case because it is still a "threshold requirement of any products-liability claim . . . that the plaintiff assert that the defendant's product caused the plaintiff's injury." *Smith v. Wyeth*, 657 F.3d 420, 423 (6th Cir. 2011).

side effects." *Feldman*, 625 A.2d at 1070. Therefore, if the plaintiffs can prove that aaiPharma knew about the adverse effects of propoxyphene before it sold the NDA for that product, then aaiPharma may be held liable for its failure to change the label on its propoxyphene product despite the fact that the alleged ingestion occurred after divestiture.

### III.

The plaintiffs in the above-captioned case have persuaded the Court to reconsider its October 10, 2012 Memorandum Opinion and Order regarding the plaintiffs' failure-to-warn claims. Although, as a general rule, "motions [for reconsideration] are not an opportunity for the losing party to offer additional arguments in support of its position," *Elec. Ins. Co. v. Freudenberg-Nok, Gen. P'ship*, 487 F. Supp. 2d 894, 902 (W.D. Ky. 2007), the Court finds that reconsideration is necessary to prevent manifest injustice. *See Leisure Caviar, LLC*, 616 F.3d at 615. New Jersey law, as applied to the unique circumstances presented here, requires the reinstatement of the plaintiffs' failure-to-warn claims against aaiPharma LLC. Accordingly, it is hereby

**ORDERED** as follows:

1. The plaintiffs' Motion for Reconsideration [MDL Record No. 2376] is **GRANTED**.

2. Counts II, V, VI, VII, VIII, IX, X, XI, XIII, XIV, and XV of the *Lopez* Amended Complaint are **REINSTATED** against aaiPharma LLC.

This 1st day of March, 2013.



Signed By:
*Danny C. Reeves* DCR
United States District Judge