UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| IN RE: DARVOCET, DARVON AND PROPOXYPHENE PRODUCTS LIABILITY LITIGATION | ) ) ) ) | Master File No. 2: 11-md-2226-DCR MDL Docket No. 2226 |
| *Bowen, et al. v. McKesson Corp., et al.,* | ) | Civil Action No. 2: 13-058-DCR |
| *Mitchell, et al. v. McKesson Corp., et al.,* | ) | Civil Action No. 2: 13-060-DCR |
| *Baltazar, et al. v. McKesson Corp., et al.,* | ) | Civil Action No. 2: 13-061-DCR |
| *Dadoush, et al. v. McKesson Corp., et al.,* | ) | Civil Action No. 2: 13-073-DCR |
| *Gomez, et al. v. McKesson Corp., et al.,* | ) | Civil Action No. 2: 13-074-DCR |
| *Saunders, et al. v. McKesson Corp., et al.,* | ) | Civil Action No. 2: 13-075-DCR |
| *Jasmin, et al. v. McKesson Corp., et al.,* | ) ) ) ) ) ) | Civil Action No. 2: 13-076-DCR  **MEMORANDUM OPINION AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the motions to remand filed in the above-captioned cases. [MDL Record Nos. 2608, 2612, 2613, 2659, 2663, 2664, 2665] In each case, the plaintiffs argue that the Court lacks subject matter jurisdiction to hear their products-liability claims because the parties are not completely diverse. The defendants maintain that the cases are removable as a mass action under the Class Action Fairness Act of 2005 ("CAFA"). They further contend that the Court has federal-question jurisdiction over the plaintiffs' claims. Finally, the defendants assert that Defendant McKesson Corporation ("McKesson") was fraudulently joined and, therefore, its citizenship does not defeat diversity.

-1-

For the reasons more fully explained below, the defendants have failed to meet their burden to demonstrate that federal jurisdiction is proper under CAFA. The Court also concludes that it lacks federal jurisdiction over the claims asserted by the plaintiffs because those claims do not necessarily depend upon a question of federal law. And consistent with prior determinations, this Court concludes that McKesson has not been fraudulently joined in these actions as a defendant. Finally, the Court again rejects the defendants arguments regarding fraudulent misjoinder. As a result, the plaintiffs' motions to remand will be granted.

## I.

The cases subject to the motions to remand were originally filed in the California Superior Court. Each involves approximately fifty plaintiffs, at least one of which is a citizen of California, although the Complaints do not specifically allege the citizenship of the remaining plaintiffs. [*See* Record No. 1-1, p. 18 ¶ 14 (*Bowen* Complaint).][1] Of the named defendants, all but one are citizens of states other than California. [*See id.*, pp. 21-29.] McKesson, however, has its principal place of business in San Francisco, California. [*Id.*, p. 19 ¶ 18] Thus, it is a California citizen for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1).

The plaintiffs generally allege that the defendants "knowingly or negligently manufactured, marketed, distributed, and sold defectively designed Propoxyphene Products without adequate warnings." [Record No. 1-1, p. 16 ¶ 2] They assert claims against all defendants for design defect, failure to warn, strict liability, negligent design, negligence, negligent failure to warn, fraudulent nondisclosure, negligent misrepresentation, fraudulent

---

1    Because the Notices of Removal and Complaints in the above-captioned cases are substantially similar, all citations to the record will refer to Civil Action No. 2: 13-58-DCR unless otherwise indicated.

misrepresentation and concealment, negligence per se, breach of express warranty, breach of implied warranty, deceit by concealment in violation of California law, false advertising in violation of the California Business and Professions Code, violation of the California Consumers Legal Remedies Act, wrongful death, and survival. The plaintiffs also assert the following claims against only the Brand Defendants: negligence, fraudulent nondisclosure, negligent misrepresentation, and fraudulent misrepresentation and concealment.

The above-captioned actions were removed to federal court and transferred to the Eastern District of Kentucky for consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. The plaintiffs moved to remand each of the cases, and the Court set a briefing schedule to allow the defendants to file a joint response and the plaintiffs to submit a joint reply. [MDL Record No. 2625] On July 9, 2013, the defendants filed a notice of supplemental authority, and the plaintiffs responded to that notice on July 18, 2013. [MDL Record Nos. 2734, 2751] The motions to remand have now been fully briefed and are ripe for review.

## II.

The statute authorizing removal, 28 U.S.C. § 1441, provides that an action is removable only if it could have been brought initially in federal court. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 83 (2005). It is well-settled that the federal courts are courts of limited jurisdiction. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Thus, any doubts regarding federal jurisdiction should be construed in favor of remanding the case to state court. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941); *Palkow v. CSX Transp., Inc.*, 431 F.3d 543, 555 (6th Cir. 2005). A defendant desiring to remove a case from state to federal

court has the burden of establishing that removal is proper.  *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 612 n.28 (1979); *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155 (6th Cir. 1993).

Here, the defendants raise three grounds for removal.  First, they assert that the above-captioned cases constitute a mass action and that jurisdiction is appropriate under 28 U.S.C. § 1332(d)(11).  Second, they contend that some of the plaintiffs' claims arise under federal law and implicate federal-question jurisdiction.  Third, although the defendants acknowledge that the Court has ruled otherwise in previous cases in this MDL proceeding, the defendants maintain that there is complete diversity because McKesson is fraudulently joined or, in the alternative, because the plaintiffs are misjoined.

### A.      CAFA Mass Action

A mass action is removable if the citizenship of any plaintiff is different from the citizenship of any defendant and the total matter in controversy exceeds $5,000,000.[2]  28 U.S.C. § 1332(d)(2).  Under CAFA, a "mass action" is defined as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact."  28 U.S.C. § 1332(d)(11)(B)(i). Any civil action in which "the claims have been consolidated or coordinated solely for pretrial proceedings" is excluded from this definition.  28 U.S.C. § 1332(d)(11)(B)(ii)(IV).  Because the defendants have established all of the other requirements for a mass action, the parties agree that

---

2       The defendants have shown – and the plaintiffs do not dispute – that the aggregate amount in controversy exceeds $5 million.  [*See* Record No. 2, pp. 9-10 ¶¶ 17-19.]

-4-

the question of jurisdiction in this matter turns on whether the plaintiffs' claims were "proposed to be tried jointly."  [MDL Record No. 2710, p. 21; MDL Record No. 2730, p. 3]

On October 23, 2012, the plaintiffs in several related California state-court cases filed a Petition for Coordination with the California Judicial Council.  They sought to coordinate seven products-liability actions alleging the use of propoxyphene products, "as well as other such cases that may be filed before [the] Petition is decided."  [MDL Record No. 2710-2, p. 8; MDL Record No. 2710-5 ("Petitioners will seek to join these additional cases via 'Add-On Petitions.'")]  Under California law, coordination of civil actions is appropriate

> if one judge hearing all of the actions for all purposes in a selected site or sites will promote the ends of justice taking into account whether the common question of fact or law is predominating and significant to the litigation; the convenience of parties, witnesses, and counsel; the relative development of the actions and the work product of counsel; the efficient utilization of judicial facilities and manpower; the calendar of the courts; the disadvantages of duplicative and inconsistent rulings, orders, or judgments; and, the likelihood of settlement of the actions without further litigation should coordination be denied.

Cal. Civ. Proc. Code § 404.1.  The plaintiffs' Petition was granted on May 16, 2013.  [MDL Record No. 2710-8]

The defendants argue that the Petition for Coordination constitutes a proposal for a joint trial and, therefore, gives rise to removal under the mass actions provision of CAFA.  Although the Petition for Coordination itself requests only a determination "whether coordination of the actions is appropriate" [MDL Record No. 2710-5, p. 2], the memorandum filed in support of the Petition goes into greater detail.  It states:

> Petitioners' counsel anticipates that the actions will . . . involve duplicative requests for the same defendant witness depositions and the same documents related to development, manufacturing, testing, marketing, and sale of the

Darvocet Product.  Absent coordination of these actions by a single judge, there is a significant likelihood of duplicative discovery, waste of judicial resources and possible inconsistent judicial rulings on legal issues.

[MDL Record No. 2710-2, p. 7]  The memorandum also states that the "[u]se of committees and standardized discovery in a coordinated setting will expedite resolution of these cases, avoid inconsistent results, and assist in alleviating onerous burdens on the courts as well as the parties."

[*Id.*, p. 8]

The declaration submitted in support of the Petition provides further arguments regarding discovery:

> 8.     Coordination of these related actions will serve the convenience of the parties, witnesses and counsel because discovery in these overlapping actions is likely to be duplicative if they proceed separately.  Coordination of these actions will prevent repetitive and redundant depositions regarding the same issues by witnesses.  In addition, without coordination, duplicative motions concerning the adequacy of the pleadings, the admissibility of scientific evidence and other matters are sure to arise.

> 10.     Absent coordination, redundant duplicative discovery and motion practice in these overlapping actions would waste litigant and judicial resources.  Duplicative discovery will result in unnecessary copying costs, expert costs, deposition costs and filing fees.  In addition, the need to take the same depositions in each of these actions will likely increase travel costs for all the litigants' counsel.

[MDL Record No. 2730-6, pp. 5-6]  None of the materials submitted in support of the Petition contain an express request for a joint trial of the matters sought to be consolidated.

The plaintiffs insist that *Tanoh v. Dow Chemical Co.*, 561 F.3d 945 (9th Cir. 2009), governs this dispute.  There, the defendant removed seven actions – each with fewer than one hundred plaintiffs – arguing that federal jurisdiction was appropriate under the mass action provision of CAFA.  Because "neither the parties nor the trial court . . . proposed consolidating

-6-

the actions for trial," the Ninth Circuit held that the seven related actions did not constitute a mass action for the purposes of removal jurisdiction. *Id.* at 950. It found this conclusion to be "consistent with both the well-established rule that plaintiffs, as masters of their complaint, may choose their forum by selecting state over federal court and with the equally well-established presumption against federal removal jurisdiction." *Id.* at 953. Despite the plaintiffs' assertion, *Tanoh* is not directly on point because there was no petition for coordination of the separate actions. Indeed, the Ninth Circuit specifically stated that the plaintiffs' "separate state court actions may, of course, become removable at some later point if plaintiffs seek to join the claims for trial." *Id.* at 956. Therefore, while the *Tanoh* court's admonition (*i.e.*, that the mass action provision should be read narrowly) is persuasive authority in support of the plaintiffs' position, the case does not compel this Court to remand the action without further analysis.

The defendants assert that *In re Abbott Laboratories Inc.*, 698 F.3d 568 (7th Cir. 2012), supports removal under CAFA's mass action provision. In *Abbott*, the Seventh Circuit considered the removal of ten state-court cases in which the plaintiffs had moved the Supreme Court of Illinois to consolidate their cases, requesting "consolidation of the cases 'through trial' and 'not solely for pretrial proceedings.'" *Id.* at 571. The court concluded that the motion to consolidate "was sufficient to create a mass action," and held that the federal district court had jurisdiction under CAFA. *Id.* at 573. This case is also distinguishable because, whereas the *Abbott* plaintiffs expressly indicated their wish for a joint trial, the Petition here contains no such request.

The defendants rely heavily on the *Abbott* court's statement that a "proposal for a joint trial can be implicit." *Id.* at 572. However, that statement must be read in the context of the Seventh Circuit's prior CAFA jurisprudence. *Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759 (7th Cir. 2008), involved the removal of a single complaint filed on behalf of 144 plaintiffs. The court held that, regardless of the plaintiffs' stated intention of resolving the case prior to trial or holding multiple trials in the same suit, the filing of a single complaint "proposed one proceeding and thus one trial." *Id.* at 762. The Seventh Circuit elaborated in a recent case, stating that a proposal for joint trial "can be implicit, as where a single complaint joins more than 100 plaintiffs' claims without proposing a joint trial; for the assumption would be that a single trial was intended — one complaint, one trial, is the norm." *Koral v. Boeing Co.*, 628 F.3d 945, 947 (7th Cir. 2011) (internal citation omitted). In short, even though a single complaint necessarily implies a proposal for a joint trial, a proposal made at a later stage in the litigation should be more clear, if not actually explicit. *See Abbott*, 698 F.3d at 573 ("Plaintiffs may not have explicitly asked that their claims be tried jointly, but the language in their motion comes very close.").

Even if it is possible for a plaintiff to imply a proposal for a joint trial under CAFA, the question remains whether the plaintiffs in the above-captioned cases have crossed that line. The defendants argue that the language of the Petition seeking coordination "'for all purposes,'" and to avoid "'duplicate and inconsistent rulings, orders, or *judgments*,'" constitutes a proposal for a joint trial. [MDL Record No. 2710, p. 17 (emphasis supplied by defendants)] The plaintiffs maintain that the defendants are reading these phrases in a vacuum, pointing out that a "judgment

-8-

does not necessarily refer to a trial judgment, but may refer to any number of rulings on pre-trial motions, or a judgment granting dismissal or summary judgment." [MDL Record No. 2730, p. 4] Further, they argue that the Petition's use of the phrase "for all purposes" merely tracks the language of section 404.1 of the California Code of Civil Procedure.

The undersigned concludes that something more than a "mere suggestion" is required to support a finding that the plaintiffs have proposed a joint trial. *Scimone v. Carnival Corp.*, No. 13-12291, 2013 WL 3287065, at *7 (11th Cir. July 1, 2013); *see Koral*, 628 F.3d at 946-47 (finding plaintiffs' statement that separate cases would most likely be tried together fell "just short of a proposal," and construing it instead as a "prediction of what might happen if the judge decided to hold a mass trial"). Concluding otherwise would "reduce the meaning of the word 'proposed' to nothing more than 'contemplated the possibility of.'" *Scimone*, 2013 WL 3287065, at *7. Based on well-established principles of statutory construction, the "more natural reading of the provision is that the plaintiffs must actually want, or at least intend to bring about, what they are proposing." *Id.* Here, the Petition for Coordination does not indicate the plaintiffs' intention to try their claims jointly. At most, it acknowledges that the coordination process *may* encompass "rulings on liability and other issues." [MDL Record No. 2730-6, p. 6] Accordingly, after reviewing the Petition for Coordination as a whole, the Court finds that the Petition does not propose a joint trial, either implicitly or explicitly.

But this finding does not end the Court's analysis. The defendants assert that, even if the plaintiffs did not request a joint trial, they "may be presumed to have sought the full scope of coordination allowable under California law" because the Petition did not "include any limitation

in scope."[3]  [MDL Record No. 2710, p. 18]  In other words, the defendants maintain that the

plaintiffs' failure to specifically seek coordination "solely for pretrial proceedings," is the

equivalent of an express proposal for a joint trial.  However, as the defendants themselves point

out, "removal jurisdiction 'turns on the meaning of the removal statute and not upon the

characterization of the suit . . . by state statutes or decisions.'"  [*Id.*, p. 22 n.9 (quoting *Shamrock*

*Oil*, 313 U.S. at 104 ("The removal statute which is nationwide in its operation, was intended

to be uniform in its application, unaffected by local law definition or characterization of the

subject matter to which it is to be applied."))]  It would frustrate the uniform application of

removal jurisdiction if the definition of a mass action was dependent on the law of the state

where the plaintiffs filed suit, rather than the actions of those plaintiffs.

Moreover, the Seventh Circuit — whose precedents the defendants urge the Court to

follow — has previously opined that "the state court's deciding on its own initiative to conduct

a joint trial would not enable removal."  *Koral*, 628 F.3d at 947.  That court reasoned that,

because the "aim of the removal provision is to prevent plaintiffs from trying to circumvent the

Class Action Fairness Act by bringing a class action as a mass action," the proposal for a joint

trial must be made by those plaintiffs to trigger the definition of mass action.  *Id.*  In other words,

the actions of the plaintiffs are the cornerstone of the mass action inquiry.  It follows that the

---

3       The California Rules of Court establish the procedure for coordinated actions, providing that the
"coordination trial judge must assume an active role in managing all steps of the pretrial, discovery, and trial
proceedings to expedite the just determination of the coordinated actions without delay."  Cal. R. Ct. 3.541(b).
Based on this provision, the defendants argue that "the scope of coordination under the California statutes
presumes coordination for trial."  [MDL Record No. 2710, p. 22]

existence of a mechanism for conducting a joint trial on coordinated cases does not create a mass action where the plaintiffs have not affirmatively sought to avail themselves of that procedure.

Because the plaintiffs' arguments in support of coordination almost exclusively concern pretrial matters such as discovery, the fact that California law contemplates the possibility of a joint trial in coordinated actions does not turn their Petition into a proposal for a joint trial. Therefore, this Court joins several other district courts in California in concluding that the Petition for Coordination does not entitle the defendants to removal under CAFA's mass action provision. [MDL Record No. 2730-3, p. 5 (rejecting the defendants' argument that the Petition for Coordination contains an implied proposal for a joint trial); *see also* MDL Record Nos. 2730-4, 2730-5] *Rice v. McKesson Corp.*, No. C 12-05949 WHA, 2013 WL 97738, at *2 (N.D. Cal. Jan. 7, 2013) (refusing to construe the "plaintiffs' petition for coordination as the functional equivalent of an express request for a joint trial").

### B.    Federal-Question Jurisdiction

Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Supreme Court has explained that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 813 (1986). In particular, where the federal law at issue does not provide a private remedy, asserting an alleged violation of that law as an element of a state tort is insufficient to establish such jurisdiction. *Id.* at 814.

The defendants argue that the Court has federal-question jurisdiction over the plaintiffs' claims against the Generic Defendants to the extent that they have alleged that the Generic Defendants failed to update their labels to match certain changes ordered by the Food and Drug Administration ("FDA") in 2009.  They maintain that such claims "necessarily involve[] the construction or application of federal law." [Record No. 2, p. 11 ¶ 25 (Notice of Removal)] The plaintiffs counter that "[f]ederal law is implicated only as a response to a federal preemption affirmative defense and not because it forms the basis for the underlying cause of action." [MDL Record No. 2612-1, pp. 10-11]

This dispute turns on the parties' interpretation of the plaintiffs' failure-to-warn claims against the Generic Defendants.  The defendants construe the plaintiffs' claims as alleging "that the generic defendants are liable in failure-to-warn due to a breach of their federal duty to use the same FDA-approved labeling as the brand defendants."  [Record No. 2, p. 12 ¶ 28]  The plaintiffs, on the other hand, argue that their claims are based on the "state law duty to provide an adequate warning."  [MDL Record No. 2730, p. 8]  They contend that this duty "is a traditional duty imposed by state, not federal law, and therefore a cause of action for breach of that duty is not an effort at private enforcement of the Food, Drug and Cosmetic Act."  [*Id.*, p. 9] In other words, the plaintiffs assert that their failure-to-warn claims are grounded in state law even if they may be determined by reference to federal law.

The defendants urge the Court to adopt the analysis in *Bowdrie v. Sun Pharmaceutical Industries Ltd.*, 909 F. Supp. 2d 179 (E.D.N.Y. 2012).  In *Bowdrie*, the district court considered claims against generic manufacturers of Dilantin, a antiepileptic drug, for failure to "update their

labeling to mirror Dilantin's July 2009 revision," as required by the federal Food, Drug, and Cosmetic Act ("FDCA"), which provides that warning labels on generic drugs must match those of the corresponding brand-name drugs. *Id.* at 182. The plaintiffs sought to remand the action because those claims did not implicate federal law. The court concluded, however, that a "question of federal law is a necessary element of Plaintiffs' state law causes of action" due to the plaintiffs' use of the "'federal duty of sameness' as a standard in their state law causes of action." *Id.* at 184. Although it acknowledged that *Merrell Dow* rejected federal-question jurisdiction under similar circumstances, the *Bowdrie* court reasoned that

> the federal issue involved goes far beyond simply incorporating a federal standard into a state law cause of action. To the extent they invoke the "federal duty of sameness," Plaintiffs' causes of action implicate the labeling requirements for generic drug manufacturers nationwide. The federal question present in this case involves a responsibility that is in the first instance, and primarily, federal: regulation of the manufacture, marketing, distribution of drugs.

*Id.* at 184-85.[4]

The defendants contend that the plaintiffs' claims are "strikingly similar" to those in *Bowdrie*. Like the *Bowdrie* plaintiffs, the plaintiffs in the above-captioned cases allege that the FDA ordered brand manufacturer Xanodyne to include a "Black Box" warning concerning the risk of fatal overdose. They further allege that, despite this, "the Generic Defendants . . . did not timely implement the Black Box warning or revise the labels for the Propoxyphene Products."[5]

---

[4]    Because the case is distinguishable, the Court does not need to enter into a discussion of the *Bowdrie* court's rationale. However, the Court does not agree that the "nationwide" implications of federal labeling requirements suffice to confer federal-question jurisdiction over a claim that would otherwise present a matter for the state courts.

[5]    The Court has previously found similar allegations to be "pure conjecture" and, thus, deficient under Rule 12(b)(6). [MDL Record No. 1305, p. 9]

[Record No. 1-2, p. 26 ¶¶ 253, 302; *id.*, p. 2 ¶¶ 120, 160.k ("Generic Defendants failed to update their labels with certain label changes that the FDA approved and/or ordered for use by the Innovator and Brand Defendants.")] Finally, the plaintiffs' Complaints generally allege that all of the defendants failed to "comply with federal standards and requirements." [*Id.*, p. 18 ¶ 260; *id.*, p. 27 ¶ 310]

However, the claims asserted in *Bowdrie* are distinguishable from those asserted by the plaintiffs in the above-captioned matters. In the present cases, the plaintiffs' claims are based on the Generic Defendants' state-law duty to warn. Rather than rely on a failure-to-update theory of liability, the plaintiffs seek to establish their failure-to-warn claims against the Generic Defendants by reference to the federal duty of sameness. This is underscored by the fact that the Complaints do not separate their failure-to-warn claims against the Generic Defendants from those asserted against the Brand Defendants. [*Id.*, pp. 23-33; *see also* Record No. 1-3, pp. 16-35 (asserting claims against "Innovator and Brand Defendants" only)] Had the plaintiffs wished to assert a claim for failure to update, it would have been sensible for them to include a separate count against the Generic Defendants, since different federal standards apply to the Brand and Generic Defendants. Thus, the plaintiffs' claims are grounded in state law. And unless the "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial," this Court does not have federal-question jurisdiction over the matter. *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

The Court finds that, as in *Merrell Dow*, the plaintiffs' "causes of action refer[] to the FDCA merely as one available criterion for determining whether" the Generic Defendants are

-14-

liable for failure to warn.   478 U.S. at 807.   Although the plaintiffs' Complaints contain allegations that the Generic Defendants' failed to update their labels to reflect the changes approved by the FDA, that is not the only theory of liability proposed.   For instance, the strict liability failure-to-warn claims are supported by allegations that the Generic Defendants failed "to include adequate warnings and instructions" and thus that their "Propoxyphene Products were in an unreasonably dangerous and defective condition."   [Record No. 1-2, p. 17 ¶¶ 254, 256]   Additionally, in their negligent failure-to-warn count, the plaintiffs allege that all defendants, including the Generic Defendants, "knew or should have known that the risks associated with Propoxyphene Products," and that they "failed to adequately disclose [those risks] to the general public or the medical community."   [*Id.*, p. 24 ¶¶ 295, 298]   Indeed, to the extent that the plaintiffs allege that, prior to the FDA's adoption of the Black Box warning in 2009, the Generic Defendants failed "to distribute their Propoxyphene Products with adequate information about . . . their associated risks" [*id.*, p. 23 ¶ 293.b], their claims could be read to assert that the Generic Defendants "breached their state duty to warn by not making various labeling changes *in spite of* the federal duty of sameness."[6]  *Brandle v. McKesson Corp.*, No. C 12-05970 WHA, 2013 WL 1294630, at *3 (N.D. Cal. Mar. 28, 2013) (emphasis in original).

In short, the "jury could find negligence on the part of [the Generic Defendants] without finding a violation of the FDCA."  *Merrell Dow*, 478 U.S. at 807.   Therefore, the Generic Defendants' alleged failure to update their labels to reflect changes approved by the FDA is merely one way that the plaintiffs propose to prove their failure-to-warn claims.   Because the

---

6        As the defendants acknowledge, the fact that these failure-to-warn claims are preempted by federal law "is immaterial to whether they give rise to federal jurisdiction."  [MDL Record No. 2710, p. 38 n.19]

plaintiffs' claims do not "depend necessarily upon a question of federal law," the Court does not have federal-question jurisdiction over this matter.  *Id.*

### C. Diversity Jurisdiction

Pursuant to 28 U.S.C. § 1332, federal district courts have original jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  28 U.S.C. § 1332(a).  The statute "has been interpreted to demand complete diversity, that is, that no party share citizenship with any opposing party." *Caudill v. N. Am. Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000).  The removing party bears the burden of establishing diversity jurisdiction.  *Coyne ex rel. Ohio v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).

Although McKesson is a California citizen, the defendants argue that it is fraudulently joined and its citizenship should be disregarded for diversity purposes.  [Record No. 2, p. 20 ¶¶ 39-40]  In the alternative, the defendants ask the Court to find that the California plaintiffs' claims are fraudulently misjoined.  [*Id.*, p. 26 ¶¶ 49-50]  The Court previously rejected these arguments in its July 2, 2012 Memorandum Opinion and Order remanding *Freitas, et al. v. McKesson Corp., et al.*, Civil Action No. 2: 12-50-DCR.  [MDL Record No. 2053][7]  However, the defendants "request that the Court reconsider its ruling in *Freitas* as to two discrete legal issues."  [MDL Record No. 2710, p. 42]

_____

7       Although the original opinion was filed on July 2, 2012, all citations to the *Freitas* opinion relate to the Amended Memorandum Opinion and Order entered on July 17, 2012. [*Compare* MDL Record No. 1987, *with* MDL Record No. 2053]

### 1.     Fraudulent Joinder

As explained above, complete diversity is required to establish diversity jurisdiction under 28 U.S.C. § 1332.  However, an exception to the complete-diversity requirement arises where a non-diverse defendant has been fraudulently joined.  *See Coyne*, 183 F.3d at 493 ("[The Sixth Circuit] has recognized that fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds.").  Fraudulent joinder exists, and the case need not be remanded, if there is no "reasonable basis" to expect that the plaintiff's claims against the non-diverse defendant could succeed under state law.  *Id.* (citing *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)).  Although the plaintiff's actual motive is irrelevant to the fraudulent-joinder inquiry, *Jerome-Duncan, Inc. v. Auto-By-Tel Mktg. Corp.*, 176 F.3d 904, 907 (6th Cir. 1999), this test serves as "a proxy for establishing the plaintiff's fraudulent intent.  If the plaintiff has no hope of recovering against the non-diverse defendant, the court infers that the only possible reason for the plaintiff's claim against [that defendant] was to defeat diversity and prevent removal."  *Smith v. SmithKline Beecham Corp.*, No. 11-56-ART, 2011 WL 2731262, at *5 (E.D. Ky. July 13, 2011) (citation and internal quotation marks omitted).  When analyzing whether a non-diverse defendant was fraudulently joined, the Court must be careful to avoid "crossing the line between a proper threshold jurisdictional inquiry and an improper decision on the merits."  *In re Briscoe*, 448 F.3d 201, 220 (3d Cir. 2006).

The defendants incorporate by reference their arguments in opposition to the motion to remand in *Frietas*.  In that action, the defendants offered three grounds support a finding of fraudulent joinder in this case: (1) the claims against McKesson are preempted under *PLIVA, Inc.*

*v. Mensing*, 131 S. Ct. 2567 (2011); (2) the claims against McKesson are not cognizable under California law; and (3) the claims against McKesson are not supported by adequate factual allegations.  [MDL Record No. 1528, p. 2]  The Court refused to address the first argument, finding that such an analysis "would be inappropriate at this juncture" because the issue of preemption goes to the merits of a claim.  [MDL Record No. 2053, p. 8]  The Court opined that the common defense rule supported this conclusion.  With respect to the second argument, the Court determined that "the defendants have failed to demonstrate that distributors of prescription drugs are not subject to liability under California law."  [*Id.*, pp. 11-12]  Finally, applying the California pleading standard, the Court found that the plaintiffs' Complaints contained an adequate factual basis for their claims against McKesson.

The defendants disagree with the Court's analysis of their preemption argument.  They reassert the preemption arguments from *Freitas*, and incorporate by reference the arguments made in a previous motion to dismiss.  [*See* MDL Record No. 2674.]  Additionally, they assert that a finding of fraudulent joinder based on federal preemption is not barred by the common defense rule.  Under the common defense rule, "a plaintiff can defeat the fraudulent-joinder exception to the requirement of complete diversity of citizenship by proving that his claim against the nondiverse defendant is no weaker than his claim against the diverse defendants." *Walton v. Bayer Corp.*, 643 F.3d 994, 1002 (7th Cir. 2011).  As explained by the Court in *Freitas*, "[t]his rule . . . is consistent with the rationale for the doctrine of fraudulent joinder: if a plaintiff's claims against diverse and non-diverse defendants suffer from the same alleged flaw, that indicates not fraudulent intent in the non-diverse defendant's joinder, but rather a problem

-18-

with the plaintiff's case overall."  [MDL Record No. 2053, pp. 9-10]  The Court found that the

common defense rule applied to prevent a finding of fraudulent joinder because a large number

of the defendants — both diverse and non-diverse — raised the same preemption defense.

The defendants maintain that because the Brand Defendants have not asserted a

preemption defense, the common defense rule does not apply.  They assert that the common

defense rule "is implicated only when the common defense asserted would be equally dispositive

to *all* of the defendants."   [MDL Record No. 2710, pp. 43-44 (citing *McDonal v. Abbott*

*Laboratories*, 408 F.3d 177, 184 (5th Cir. 2005) (emphasis in original))]  The defendants thus

argue that "[b]ecause the *Mensing* preemption defense does not dispose of the whole action, the

common defense rule is inapplicable."  [*Id.*, p. 44]

However, the common defense rule was not the primary basis for the Court's discussion

of preemption in *Freitas*.  Rather, the Court relied on a fundamental premise of the fraudulent

joinder doctrine, which provides that "the focus of the inquiry must be on the joinder, not the

merits of the plaintiff's case."  *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir.

2004).[8]  Because preemption goes to the merits of an action, it cannot be used to demonstrate that

a defendant is fraudulently joined.  [MDL Record No. 2053, pp. 8-9]  As the Ninth Circuit

explained in *Hunter v. Philip Morris USA*, 582 F.3d 1039 (9th Cir. 2009),

> [w]hen a defendant asserts that the plaintiff's claim is impliedly preempted by
> federal law, it cannot be said that the plaintiff's failure to state a claim against the

---

8        The *Smallwood* court noted that "it is not unimportant that our application of the improper joinder
doctrine here disallows circumvention of the well-pleaded complaint rule."  385 F.3d at 575.  Where a
defendant cannot remove a case because the "only federal question appear[s] as a defense," it seems illogical
to allow that defendant to remove on the basis of that same defense, repackaged "as the bar to a reasonable
basis for predicting recovery against . . . the in-state defendant."  *Id.* at 576.

resident defendant is obvious according to the settled rules of the state. Rather, the preemption question requires an inquiry into the merits of the plaintiff's claims against all defendants and an analysis of federal law. In such a case, the defendant has failed to overcome the strong presumption against removal jurisdiction.

*Id.* at 1045 (internal citations and quotation marks omitted); *see also Hughes v. Mylan Inc.*, No. 11-5543, 2011 WL 5075133, at *6 (E.D. Pa. Oct. 25, 2011) ("*Mensing* merely provides a framework for the state court to adjudicate Plaintiffs' claim; it is not a hook that lands these cases in federal court.").

Thus, it would be inappropriate for the Court to analyze whether the claims against McKesson are preempted by federal law at this stage in the proceedings, and the Court reiterates its previous conclusion that the defendants' preemption argument does not support a finding of fraudulent joinder.[9] The Court sees no reason to revisit the defendants' other arguments regarding fraudulent joinder, which were previously addressed and rejected in *Freitas*. The defendants have failed to establish that McKesson is fraudulently joined in the above-captioned actions.

---

[9] The United States Supreme Court's opinion in *Mutual Pharmaceutical Co. v. Bartlett*, 133 S. Ct. 2466 (2013), does not change this determination. In their Notice of Supplemental Authority, the defendants assert that the "conclusion that Plaintiffs have no colorable claim against McKesson results, as in *Bartlett*, from a 'straightforward application of pre-emption law,' and does not require the court to delve into the merits of Plaintiffs' factual allegations." [MDL Record No. 2734, p. 3] However, the *Bartlett* Court specifically left open the question of whether "design-defect claims that parallel the federal misbranding statute" are preempted. 133 S. Ct. at 2477 n.4. And, not unexpectedly, the plaintiffs now maintain that their claims "parallel the FDA's determination that propoxyphene products were misbranded." [MDL Record No. 2751, p. 2] Therefore, to resolve the question of preemption in these cases, the Court would be required to interpret the plaintiffs' claims, an undertaking that would most likely result in an "improper decision on the merits." *Briscoe*, 448 F.3d at 220.

### 2.    Misjoinder

The defendants also ask the Court to apply the fraudulent misjoinder doctrine to find that the plaintiffs have "improperly joined the claims of multiple unrelated individuals in a single suit and have thereby frustrated complete diversity." [MDL Record No. 2710, p. 45] They acknowledge that the Court has previously rejected this argument, but ask the Court to reconsider. In doing so, however, the defendants misstate the Court's opinion in *Frietas*. The Court did not base its conclusions on a "finding that Plaintiffs were not 'egregiously' misjoined." [*Id.*] Rather, the Court refused to apply the fraudulent misjoinder doctrine due to the "unsettled law surrounding the doctrine." [MDL Record No. 2053, p. 17] Despite this, the Court averred that the relationship between the various plaintiffs' claims likely satisfied California's joinder rule.

The defendants argue that "joinder need only be procedurally improper, not egregious, to allow for removal under the procedural misjoinder doctrine." [MDL Record No. 2710, p. 46] They cite several cases from other circuits in support of their position. [*Id.* (citing *Greene v. Wyeth*, 344 F. Supp. 2d 674, 685 (D. Nev. 2004); *Grennell v. W.S. Life Ins. Co.*, 298 F. Supp. 2d 390, 395-97 (S.D.W. Va. 2004); and *Burns v. W.S. Life Ins. Co.*, 298 F. Supp. 2d 401, 403 (S.D.W. Va. 2004))] However, courts within this district, including this Court in *Frietas*, have previously adopted a different standard. As a result, the Court rejects the defendants assertion that the standard for misjoinder is lower than that used for fraudulent joinder.

The defendants also contend that "the better view of the procedural misjoinder doctrine applies federal, rather than California, standards, and leads to a clear finding of misjoinder here."

[*Id.*, pp. 45-46 n.25]  They contend that under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), the Court must apply federal procedural law, specifically Rule 20 of the Federal Rules of Civil Procedure, to determine whether the plaintiffs were misjoined.  However, the Court declines to revisit its earlier determination that state law governs this analysis.  The majority of courts that have considered this question have concluded that state procedural law should apply "since the question is whether the parties were misjoined in state court."  *Osborn v. Metro Life Ins. Co.*, 341 F. Supp. 2d 1123, 1128 (E.D. Cal. 2004).  Although the defendants point to Rule 81(c), which provides that the Federal Rules of Civil Procedure apply to all cases removed from state court, the Court has previously explained that "Rule 81 cannot apply until after the Court has determined that removal was proper."  [MDL Record No. 2053, p. 13 n.11]  Moreover, Rule 81 must be read in conjunction with Rule 82's admonition that the Federal Rules should not be applied to "extend or limit the jurisdiction of the district courts."  Fed. R. Civ. P. 82.  This rule is violated when a district court "uses a federal rule to sever the claims in a removed case, if those claims were *properly joined under state law when the suit was originally filed*.  Such a reshaping of the action by the district court creates jurisdiction where it did not previously exist." *Jamison v. Purdue Pharma Co.*, 251 F. Supp. 2d 1315, 1321 n.6 (S.D. Miss. 2003) (emphasis in original).

In summary, the Court will continue to follow the majority rule and apply California pleading standards to the Complaints in this matter to determine whether the plaintiffs' claims were properly joined.  California's joinder rule is "satisfied by *any* factual relationship between the claims joined."  *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 624 F. Supp. 2d

396, 420 (E.D. Pa. 2009) (internal quotation marks omitted).  Because the "plaintiffs claim to have suffered similar injuries arising out of the defendants' manufacture, marketing, or sale of propoxyphene products," the California joinder rule is satisfied here.  [MDL Record No. 2053, p. 18]  Regardless, the Court finds that the preferable route is to refuse to apply the fraudulent misjoinder doctrine at all, and leave "the whole enterprise to the state courts." *Murriel-Don Coal Co. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 600 (E.D. Ky. 2011).  The defendants have failed to show that remand is improper based on the fraudulent misjoinder doctrine.[10]

### III.

The defendants have not carried their burden to establish that removal of this action was proper.  Accordingly, it is hereby

**ORDERED** as follows:

1.      The plaintiffs' motions to remand [MDL Record Nos. 2608, 2612, 2613, 2659, 2663, 2664, 2665] are **GRANTED**.

2.      *Bowen, et al. v. McKesson Corp., et al.* (Civil Action No. 2: 13-58-DCR) and *Mitchell, et al. v. McKesson Corp., et al.* (Civil Action No. 2: 13-60-DCR) are **REMANDED** to the California Superior Court, Kern County, and **STRICKEN** from this Court's docket.

3.      *Baltazar, et al. v. McKesson Corp., et al.* (Civil Action No. 2: 13-61-DCR) is **REMANDED** to the California Superior Court, Fresno County, and **STRICKEN** from this Court's docket.

---

10      For the same reasons, the Court will not sever the plaintiffs' claims.  [*See* MDL Record No. 2053, p. 19.]

4.      *Dadoush, et al. v. McKesson Corp., et al.* (Civil Action No. 2: 13-73-DCR), *Gomez, et al. v. McKesson Corp., et al.* (Civil Action No. 2: 13-74-DCR), and *Saunders, et al. v. McKesson Corp., et al.* (Civil Action No. 2: 13-75-DCR) are **REMANDED** to the California Superior Court, San Diego County, and **STRICKEN** from this Court's docket.

5.      *Jasmin, et al. v. McKesson Corp., et al.* (Civil Action No. 2: 13-76-DCR) is **REMANDED** to the California Superior Court, Imperial County, and **STRICKEN** from this Court's docket.

This 25th day of July, 2013.

Signed By:

*Danny C. Reeves*   DCR

**United States District Judge**

-24-