UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| IN RE: DARVOCET, DARVON, AND PROPOXYPHENE PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | Master File No. 2: 11-md-2226-DCR MDL Docket No. 2226 |
| *Bowen, et al.*, v. McKesson Corp., et al., | ) | Civil Action No. 2: 13-058-DCR |
| *Mitchell, et al.*, v. McKesson Corp., et al., | ) | Civil Action No. 2: 13-060-DCR |
| *Baltazar, et al.*, v. McKesson Corp., et al., | ) | Civil Action No. 2: 13-061-DCR |
| *Dadoush, et al.*, v. McKesson Corp., et al., | ) | Civil Action No. 2: 13-073-DCR |
| *Gomez, et al.*, v. McKesson Corp., et al., | ) | Civil Action No. 2: 13-074-DCR |
| *Saunders, et al.*, v. McKesson Corp., et al., | ) | Civil Action No. 2: 13-075-DCR |
| *Jasmin, et al.*, v. McKesson Corp., et al., | ) ) ) ) ) ) | Civil Action No. 2: 13-076-DCR **MEMORANDUM OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

This pharmaceutical multi-district litigation ("MDL") action is pending for consideration of the plaintiffs' motion for a suggestion of remand in the above-captioned cases. [MDL Record No. 3034] In each case, the plaintiffs argue that the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(11)(C)(1), entitles them to remand to the United States District Courts in California from which they were transferred. Indicating their intention to file with the United States Judicial Panel on Multi-district Litigation ("JPML") a motion to remand to the transferor courts, plaintiffs move this Court to issue a suggestion of remand under Rule 10.3 of the Rules of Procedure of U.S. J.P.M.L. The defendants oppose the request. For the reasons discussed below, the motion will be granted.

## I.

The cases subject to the present motion were originally filed in the California Superior Court and removed to federal court on CAFA "mass action" grounds, as well as diversity and federal question grounds. Under the MDL statute, civil actions "involving one or more common questions of fact" may be transferred to any district for coordination or consolidated pretrial proceedings." 28 U.S.C. § 1407. The JPML consolidated these actions to serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. *See In re Express Scripts, Inc. Pharm. Benefits Litig.*, 368 F. Supp.2d 1356, 1357 (J.P.M.L. 2005). To that end, the cases were transferred to the United States District Court for the Eastern District of Kentucky. [MDL Record Nos. 2596, 2615]

Because the transferor courts in California stayed consideration of the plaintiffs' motions for remand to state court pending the JPML's decision to transfer the cases, this Court inherited the issue. In its initial review, the Court found federal jurisdiction lacking, rejecting the defendant's arguments of jurisdiction on CAFA, diversity, and federal question grounds, and granted the plaintiffs' motions for remand to state court. [MDL Record No. 2753] However, in light of the decision of the United States Court of Appeals for the Ninth Circuit in *Corber v. Xanodyne Pharm., Inc.*, 771 F.3d 1218, 1225 (9th Cir. 2014) (en banc), finding that a request for coordination or consolidation "for all purposes" creates federal jurisdiction under CAFA's mass action provision, the United States Court of Appeals for the Sixth Circuit vacated this Court's initial Order of Remand and directed the Court to reconsider whether removal was appropriate under CAFA. [MDL Record No. 3008] The Court has done so, finding that the plaintiffs proposed a joint trial, which created federal

jurisdiction under CAFA's mass action provision. [MDL Record No. 3009] As a result, the issue before the Court is no longer a question of *removal*, but one of *transfer*.

The plaintiffs challenge the JPML's authority to transfer the actions from the various United States District Courts in California to this Court. Although CAFA expanded access to the federal courts for a new category of cases called "mass actions," it limited the JPML's authority to transfer these cases. *See* § 1332(d)(11)(C)(i). Specifically, CAFA prohibits transfer under 28 U.S.C. § 1407 – the multi-district litigation statute – of an action removed on mass action grounds, absent consent by a majority of the plaintiffs. *See* 28 U.S.C. § 1332(d)(11)(C)(i). However, this prohibition is not an impediment to transfer where other grounds for federal jurisdiction are also asserted. *In re: Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 939 F. Supp. 2d 1376, 1381 (J.P.M.L. 2013).

The JPML found transfer proper in the instant cases because the defendants asserted multiple grounds for federal jurisdiction. *Id.* The plaintiffs now argue that, because the defendants' non-CAFA grounds for jurisdiction are meritless, the cases are subject to CAFA's transfer preclusion and the JPML transfer should be undone. Thus, the plaintiffs' motion presents two issues. First, the Court must determine whether CAFA is the only existing basis for removal. Second, the Court must evaluate whether to retain or remand a mass action that has been properly transferred by JPML on multiple removal grounds, where the non-CAFA grounds are later found meritless.

II.

Although the Court has already determined that removal from state to federal court was proper under CAFA, the Court must consider the remaining grounds for removal to determine whether the cases are properly before this Court, as transferee, or whether they

should be transferred back to the federal district courts in California. Because the Court's prior Order analyzing removal [MDL Record No. 2753] has since been vacated by the Sixth Circuit, the Court takes up the issue again. The parties have extensively addressed the grounds for removal [MDL Record Nos. 2608, 2612, 2613, 2659, 2663, 2664, 2665, 2710, 2730], and no further briefing is necessary. In addition to CAFA, the defendants argue that diversity jurisdiction and federal question jurisdiction provide alternative grounds for removal from state court.

**A.      Diversity Jurisdiction**

These cases were originally filed in the California Superior Court in eleven different California counties. [MDL Record No. 2710, p. 4] Each involves multiple plaintiffs, at least one of whom is a citizen of California, although the Complaints do not specifically allege the citizenship of the remaining plaintiffs. [*See* Record No. 1-1, p. 18 (*Bowen* Complaint)][1] All but one of the named defendants are citizens of states other than California. [*See id.*, pp. 21-29] The exception is Defendant McKesson Corporation, which has its principal place of business in San Francisco. Thus, it is a California citizen for purposes of diversity jurisdiction. [*Id.*, p. 28] *See* 28 U.S.C. § 1332(c)(1). The plaintiffs generally assert claims against all defendants of design defect, failure to warn, strict liability, negligent design, negligence, negligent failure to warn, fraudulent nondisclosure, negligent misrepresentation and concealment, fraudulent misrepresentation, negligence per se, breach of express warranty, breach of implied warranty, deceit by concealment in violation of California law,

---

[1] Because the Notices of Removal and Complaints in the above-captioned cases are substantially similar, all citations to the record will refer to Civil Action No. 2: 13-58-DCR unless otherwise indicated.

false advertising in violation of the California Business and Professions Code, violation of the California Consumers Legal Remedies Act, wrongful death, and survival.

Under 28 U.S.C. § 1332, federal district courts have original jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a). A federal court has jurisdiction under § 1332 only if there is "complete diversity between all plaintiffs and all defendants." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). The removing party bears the burden of establishing diversity jurisdiction. *Coyne ex rel. Ohio v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).

Although McKesson is a California citizen, the defendants argue that it is fraudulently joined and its citizenship should be disregarded for diversity purposes. [MDL Record No. 2710, pp. 32-33] In the alternative, the defendants ask the Court to find that the California plaintiffs' claims are fraudulently misjoined. [*Id.*, p. 26] The Court previously rejected these arguments in its July 2, 2012 Memorandum Opinion and Order remanding *Freitas, et al. v. McKesson Corp., et al.*, Civil Action No. 2: 12-50-DCR. [MDL Record No. 2053] However, the defendants requested "that the Court reconsider its ruling in *Freitas* as to two discrete legal issues." [MDL Record No. 2710, p. 42]

### 1.     Fraudulent Joinder

As explained above, complete diversity is required to establish diversity jurisdiction under 28 U.S.C. § 1332. An exception to the complete diversity requirement is presented where a non-diverse defendant has been fraudulently joined. *See Coyne*, 183 F.3d at 493 ("[The Sixth Circuit] has recognized that fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds."). Fraudulent joinder occurs "when the non-

removing party joins a party against whom there is no colorable cause of action." *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009). In determining whether the non-removing party asserted a colorable claim against a non-diverse party, the Court resolves all disputed questions of fact and ambiguities of law in favor of the non-removing party and considers whether the law *might* impose liability on the non-diverse party. *Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.*, 512 F. App'x 485, 489 (6th Cir. 2013). Although the plaintiff's actual motive is irrelevant to the fraudulent-joinder inquiry, *Jerome-Duncan, Inc. v. Auto-By-Tel Mktg. Corp.*, 176 F.3d 904, 907 (6th Cir. 1999), this test serves as "a proxy for establishing the plaintiffs fraudulent intent. If the plaintiff has no hope of recovering against the non-diverse defendant, the court infers that the only possible reason for the plaintiff's claim against [that defendant] was to defeat diversity and prevent removal." *Smith v. SmithKline Beecham Corp.*, No. 11-56-ART, 2011 WL 2731262, at *5 (E.D. Ky. July 13, 2011) (citation and internal quotation marks omitted). When analyzing whether a non-diverse defendant was fraudulently joined, the Court must be careful to avoid "crossing the line between a proper threshold jurisdictional inquiry and an improper decision on the merits." *In re Briscoe*, 448 F.3d 201, 220 (3d Cir. 2006).

The defendants argue that the plaintiffs' claims against McKesson are preempted under *PLIVA , Inc. v. Mensing*, 131 S. Ct. 2567 (2011), resulting in fraudulent joinder. A fundamental premise of the fraudulent joinder doctrine provides that "the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). Because preemption goes to the merits of an action, it cannot be used to demonstrate that a defendant is fraudulently joined. As the United States

Court of Appeals for the Ninth Circuit explained in *Hunter v. Philip Morris USA*, 582 F.3d 1039 (9th Cir. 2009),

> [w]hen a defendant asserts that the plaintiff's claim is impliedly preempted by federal law, it cannot be said that the plaintiff's failure to state a claim against the resident defendant is obvious according to the settled rules of the state. Rather, the preemption question requires an inquiry into the merits of the plaintiff's claims against all defendants and an analysis of federal law. In such a case, the defendant has failed to overcome the strong presumption against removal jurisdiction.

*Id.* at 1045 (internal citations and quotation marks omitted). Thus, it would be inappropriate for the Court to analyze whether the claims against McKesson are preempted by federal law at this stage in the proceedings, and the Court reiterates its previous conclusion that the defendants' preemption argument does not support a finding of fraudulent joinder. The Court has previously addressed and rejected the defendants' fraudulent joinder arguments in *Freitas* and will not reconsider them here. The defendants have failed to establish that McKesson is fraudulently joined in the above-captioned actions.

### 2. Misjoinder

Having previously determined that state law governs misjoinder analysis, [MDL Record No. 2053, p. 13 n.11] the Court has already refused to apply the fraudulent misjoinder doctrine in the cases at hand, due to the "unsettled law surrounding the doctrine." [MDL Record No. 2053, p. 17] However, the Court also noted that the relationship among the various plaintiffs' claims likely satisfies California's joinder rule, which is met when there is "*any* factual relationship between the claims joined." *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 624 F. Supp. 2d 396, 420 (E.D. Pa. 2009) (internal quotation marks omitted). Because the plaintiffs claim to have suffered similar injuries arising out of the defendants' manufacture, marketing, or sale of propoxyphene products," the California

joinder rule is satisfied here. Regardless, the Court finds that the preferable route is to decline to apply the fraudulent misjoinder doctrine at all and leave "the whole enterprise to the state courts." *Murriel-Don Coal Co. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 600 (E.D. Ky. 2011). Based on the foregoing, the defendants have failed to establish complete diversity, and the court lacks diversity jurisdiction.

### B. Federal Question Jurisdiction

Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Supreme Court has explained that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 813 (1986). In particular, where the federal law at issue does not provide a private remedy, asserting an alleged violation of that law as an element of a state tort is insufficient to establish such jurisdiction. *Id.* at 814.

The defendants argue that the Court has federal-question jurisdiction over the plaintiffs' claims against the Generic Defendants to the extent that they have alleged that the Generic Defendants failed to update their labels to match certain changes ordered by the Food and Drug Administration ("FDA") in 2009. They maintain that such claims "necessarily involve[] the construction or application of federal law." [Record No. 2, p. 11] The plaintiffs counter that "[f]ederal law is implicated only as a response to a federal preemption affirmative defense and not because it forms the basis for the underlying cause of action." [MDL Record No. 2612-1, pp. 10-11]

The defendants construe the plaintiffs' failure-to-warn claims as alleging "that the generic defendants are liable in failure-to-warn due to a breach of their federal duty to use the

same FDA-approved labeling as the brand defendants." [Record No. 2, p. 12] The plaintiffs, on the other hand, argue that their claims are based on the "state law duty to provide an adequate warning." [MDL Record No. 2730, p. 8] They contend that this duty "is a traditional duty imposed by state, not federal law, and therefore a cause of action for breach of that duty is not an effort at private enforcement of the Food, Drug and Cosmetic Act." [*Id.*, p. 9] In other words, the plaintiffs assert that their failure-to-warn claims are grounded in state law even if they may be determined by reference to federal law.

The plaintiffs seek to establish their failure-to-warn claims against the Generic Defendants by reference to the federal duty of sameness. This is underscored by the fact that the Complaints do not separate their failure-to-warn claims against the Generic Defendants from those asserted against the Brand Defendants. [Record No. 1-2, pp. 23-33; *see also* Record No. 1-3, pp. 16-35] Thus, the plaintiffs' claims are grounded in state law. And unless the "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial," this Court does not have federal-question jurisdiction over the matter. *Grable & Sons Metal Prods. V. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

The Court finds that, as in *Merrell Dow*, the plaintiffs' "causes of action refer[] to the FDCA merely as one available criterion for determining whether" the Generic Defendants are liable for failure to warn. 478 U.S. at 807. Although the plaintiffs' Complaints contain allegations that the Generic Defendants' failed to update their labels to reflect the changes approved by the FDA, that is not the only theory of liability proposed. For instance, the strict liability failure-to-warn claims are supported by allegations that the Generic Defendants failed "to include adequate warnings and instructions' and thus that their "Propoxyphene Products were in an unreasonably dangerous and defective condition." [Record No. 1-2, p.

17] Additionally, in their negligent failure-to-warn count, the plaintiffs allege that all defendants, including the Generic Defendants, "knew or should have known that the risks associated with Propoxyphene Products," and that they "failed to adequately disclose [those risks] to the general public or the medical community." [*Id.*, p. 24] Indeed, to the extent that the plaintiffs allege that, prior to the FDA's adoption of the Black Box warning in 2009, the Generic Defendants failed "to distribute their Propoxyphene Products with adequate information about … their associated risks," [*id.*, p. 23], their claims could be read to assert that the Generic Defendants "breached their state duty to warn by not making various labeling changes *in spite of* the federal duty of sameness." *Brandle v. McKesson Corp.*, No. C12-05970-WHA 2013 WL 1294630, at *3 (N.D. Cal. Mar. 28, 2013) (emphasis in original).

In short, the "jury could find negligence on the part of [the Generic Defendants] without finding a violation of the FDCA." *Merrell Dow*, 478 U.S. at 807. Therefore, the Generic Defendants' alleged failure to update their labels to reflect changes approved by the FDA is merely one way that the plaintiffs propose to prove their failure-to-warn claims. Because the plaintiffs' claims do not "depend necessarily upon a question of federal law," the Court does not have federal-question jurisdiction over this matter. *Id.*

### III.

Having found that CAFA's mass action provision is the only basis for removal to federal court, the Court next considers whether, under 28 U.S.C. § 1332(d)(11)(C)(1), the Court should retain the cases or recommend remand to the transferor courts. The power to remand lies solely with the JPML. *See* 28 U.S.C. § 1407(a) ("Each action . . . transferred [by the JPML] shall be remanded *by the panel* at or before the conclusion of such pretrial proceedings to the district from which it was transferred.") (emphasis added); *In re Roberts*,

178 F.3d 181, 183 (3d Cir. 1999). The JPML, however, gives great weight to the suggestion of a transferee judge that remand is warranted, "an indication that he perceives his role under Section 1407 to have ended." *In re Holiday Magic Sec. and Antitrust Litig.*, 433 F. Supp. 1125, 1126 (J.P.M.L. 1977) (internal citations omitted.) In determining whether to issue a suggestion for remand to the JPML, a transferor court should be guided by the standards for remand employed by the JPML. *See McKinney v. Bridgestone/Firestone, Inc.*, 128 F. Supp. 2d 1196, 1197 (S.D. Ind. 2001).

The plain language of § 1407 "accords the Panel discretion to remand cases before the conclusion of pretrial proceedings, and courts routinely have read the statute in that flexible fashion." *In re Express Scripts, Inc.*, 2010 U.S. Dist. LEXIS 131444 at *11 (E.D. Mo. Dec. 13, 2010) (citing *In re Brand-Name Prescription Drugs Antitrust Litig.*, 264 F. Supp. 2d 1372, 1375 (J.P.M.L. 2003). The exercise of that discretion to remand "generally turns on the question of whether the case will benefit from further coordinated proceedings as part of the MDL." *Id.* (citing *In re Air Crash Disaster*, 462 F. Supp. 671, 672-73 (J.P.M.L. 1978)). However, this is the unusual case where the question of remand turns instead on whether the case is properly within the MDL system at all.

In past MDL cases, the putative transferor court has been given the opportunity to rule on motions to remand mass actions to state court to determine the grounds (if any) on which removal was proper. *See In re Plavix Mktg., Sales Practices & Prods. Liab. Litig. (No. II)*, MDL No. 2418, 2013 WL 565971, at *3 (J.P.M.L. Feb. 12, 2013). Because remand to state court would moot the issue of § 1407 transfer, the MDL Panel traditionally postpones issuing transfer orders until after the transferor court's determination. As a result, in mass action transfers, neither the MDL panel nor the transferee court typically reaches the issue of

§ 1332(d)(11)(C)(i) until the grounds for removal have been evaluated. However, the cases at bar were transferred before the issue of removal was analyzed and, as a result, this Court must now determine the post-transfer effect of CAFA's transfer preclusion provision.

At the time of transfer, the JPML found that the assertion of alternative grounds for removal were sufficient to avoid CAFA's mass-action transfer provision and authorize transfer to an MDL court. [MDL Record No. 2596] The defendants argue that, under the JPML's prior decision, they need only *assert* other grounds for transfer to be appropriate. Indeed, the Panel has rejected the suggestion that, where an action has been removed on mass action and other grounds, the JPML should assess the *reasonableness* of those other grounds. *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*, 2014 U.S. Dist. LEXIS 77978, at *2 (J.P.M.L. June 6, 2014). If transfer is otherwise appropriate under 28 U.S.C. § 1407, the JPML relies on the transferee judge to sort out jurisdictional and removal issues.

However, while the *assertion* of additional grounds for removal suffices to allow MDL transfer by the JPML, nothing precludes the transferee court from evaluating the additional grounds and – when those grounds fail – suggesting that the transfer be undone. Without the benefit of precedent, this Court must determine the better of two potential outcomes. The first outcome is that the cases remain in the transferee court, despite being removed solely on the basis of CAFA's mass action provision. Although more efficient for pretrial proceedings, this cannot be the correct result, as it would allow parties to bypass § 1332(d)(11)(C)(1) simply by asserting meritless grounds for removal. Just as cases are "not transferrable merely because the defendant has cited to the mass action provision as an additional ground in its notice of removal," [MDL Record No. 2596, p. 4] cases are not

bound to adjudication in a transferee court merely because the defendant has cited to additional grounds that later prove insufficient.

The second potential outcome is JPML remand of mass actions to their original federal courts following a transferee court's finding that removal was proper solely on CAFA grounds. This result, although less efficient, preserves the effect of CAFA's prohibition on transfers. It does not require the JPML panel to impermissibly consider the validity of jurisdictional grounds asserted, but merely affords the transferee court an opportunity to determine jurisdiction and, where appropriate, relinquish cases that are not subject to transfer under CAFA. The JPML has noted and the parties agree that "the language of Section 1332(d)(11)(C)(i) clearly circumscribes the Panel's authority to transfer an action removed *solely* as a mass action." [MDL Record No. 2596, p. 2] Nothing in the JMPL's decision in *In re Darvocet* suggests that a case that would otherwise have been precluded from MDL transfer under CAFA must be retained by a transferee court merely because the defendant has cited additional, meritless grounds in its notice of removal. *See* 939 F. Supp. 2d at 1381. Moreover, if the grounds for removal had originally been determined by the transferor courts, § 1332(d)(11)(C)(1) would have precluded transfer to this Court. The undersigned finds no reason to reach a different result simply because of the cases' procedural posture at the time of transfer.

**IV.**

Ultimately, the decision to remand a case to the transferor court rests with the JPML. Because these actions are properly removed solely based on the CAFA without the consent of a majority of the plaintiffs, these cases are not subject to transfer under 28 U.S.C. § 1407 and the Court will suggest that they be remanded. Finally, the plaintiffs have moved the

Court to stay further proceedings in these actions. [MDL Record No. 3035] They argue that further litigation should be put on hold until remand has been determined. The defendants oppose the motion. [MDL Record No. 3045] The Court finds that judicial economy would be served by the requested stay. Accordingly, it is hereby

**ORDERED** as follows:

1. The plaintiffs' Request for Suggestion of Remand to the United States District Courts within the State of California from which they were transferred [MDL Record No. 3034] is **GRANTED**. The Court suggests that these cases be remanded by the JPML.

2. The plaintiffs' motion to stay proceedings [MDL Record No. 3035] is **GRANTED**. All further proceedings before this Court are **STAYED** in the above-captioned cases, pending the JPML's resolution of the suggestion of remand.

This 15th day of May, 2015.

Signed By:
*Danny C. Reeves* DCR
United States District Judge